[No. 29705. Department One. October 25, 1945.]

ROY J. MAHONEY, *Respondent,* v. VENDEL CANAFAX *et al.,*
Appellants.[1]

*Arthur H. Hutchinson,* for appellants.

*Emil G. Gustavson,* for respondent.

STEINERT, J.—This action arose out of a collision between
two automobiles within a street intersection. Plaintiff in-
stituted suit to recover for damages to his car. Defendants
cross-complained, seeking reimbursement for damages to
their automobile and also for personal injuries sustained by

[1]Reported in 162 P. (2d) 903.

one of the defendants. The cause was tried to the court without a jury. The court made findings, supporting its conclusions, and entered judgment in favor of the plaintiff. Defendants appealed.

The accident here involved occurred within the intersection of Beacon avenue and Spokane street, in the city of Seattle, at about seven forty-five o'clock on the morning of October 21, 1943. Beacon avenue in that vicinity extends in a northerly and southerly direction. Spokane street extends in a slightly northwesterly and southeasterly direction, although, for practical purposes here, it may be assumed that the two streets cross each other at right angles.

The intersection itself is of somewhat irregular shape and dimensions, owing in part to the character of street improvement of Beacon avenue on the opposite sides of Spokane street. South of the intersection, Beacon avenue is ninety-six feet wide from curb to curb. The easterly side of that area is paved with black-top to a width of eighteen feet and accommodates vehicular traffic going either north or south. On the westerly side of that area of the avenue a strip of pavement, intended for south-bound traffic, was under construction, but had not yet been opened for travel.

North of the intersection, Beacon avenue is forty-eight feet wide from curb to curb and is paved its full width. The entire paved portion of Beacon avenue in that area, however, is about five feet west of the westerly line of the paved portion of the avenue south of the intersection, if that line were extended northwardly. In consequence of these conditions, traffic coming from the south along Beacon avenue is required to veer slightly toward the northwest, within the intersection, in order to attain its proper position on the avenue after crossing the intersection. Traffic coming from the north and entering the intersection is required to veer somewhat more, and to the southeast, in order to continue its proper course along the traveled paved strip south of the intersection.

At a point in the middle of Beacon avenue and about one hundred twenty feet south of the center of the intersection is an illuminated sign, three feet wide and four feet high, set

so as to extend upward about seven feet from the ground, with an arrow directing traffic coming from the north across the intersection to proceed along the traveled paved strip of Beacon avenue, south of the intersection.

Spokane street, on both sides of the intersection, is paved from curb to curb, a distance of twenty-five feet. While neither that street nor Beacon avenue is an arterial highway in that vicinity, the fact is, nevertheless, that stop signs are placed along Spokane street only, at points twenty or twenty-five feet back of the southwesterly and northeasterly corners, respectively, requiring traffic along Spokane street in either direction to stop before entering the intersection. Both streets are quite heavily traveled in the early morning and late afternoon.

At the southwest corner of the intersection is a fire station, sitting back about fifteen feet from the inner edge of the southerly sidewalk of Spokane street and opposite the stop sign. On the easterly sidewalk of Beacon avenue, about twenty feet north of the northerly line of the intersection, is a fire hydrant.

On the occasion here in question, respondent, Roy J. Mahoney, traveling alone, was driving his Chevrolet coupe northwardly along Beacon avenue toward the intersection. At the same time, appellant Vendel Canafax, who likewise was unaccompanied, was driving his Studebaker coupe eastwardly along Spokane street toward the intersection. It was raining at the time and the streets were wet and slippery. Both cars entered the intersection at about the same time and collided with each other in the northeast quarter thereof at a point eight or ten feet east of the center line of Beacon avenue and several feet north of the center line of Spokane street. The impact was between the left front and side of respondent's car and the right front and side of appellants' car. No one other than the two drivers witnessed the collision or the movement of either car after it had entered the intersection. Debris found in the street indicated the point where the collision occurred as stated above.

Photographs taken at the scene of the accident shortly after its occurrence, and before the two cars were finally

moved by a wrecker, established the fact that after the impact, respondent's car traveled forward about ten feet and came to rest, within the intersection, with its front end about three feet south of the north line of Spokane street; while, in the meantime, appellants' car had traveled forward about thirty feet until it struck and stopped at the fire hydrant located on the sidewalk on Beacon avenue north of the intersection. Both cars were seriously damaged, and the appellant Vendel Canafax, who was thrown out of his car onto the street, sustained injuries about his head and back.

The principal, and almost entire, dispute in point of fact is with reference to what occurred immediately before the collision, and this dispute hinges mainly upon the testimony of the two actors in the case. Respondent's version and contention are that the accident occurred solely through the negligence of the appellant driver, while, on the contrary, appellants' version and contention are that respondent not only was guilty of contributory negligence, but also failed to exercise the last clear chance to avoid the collision and therefore should be required to respond to them in damages.

Respondent testified that he approached the intersection, traveling along Beacon avenue at a speed of about twenty miles an hour, which was the rate of speed designated for that zone. As he was entering the intersection he observed appellants' car approaching from the west, or left, and entering the intersection without previously stopping at the stop sign located near the southwest corner. Appellants' car was traveling at a speed estimated by the respondent at twenty-five or thirty miles an hour. Respondent sounded his horn and slowed down, thinking that the other driver would likewise slow down or else stop before proceeding into respondent's lane of travel. The other driver, appellant Vendel Canafax, to whom we shall from now on refer to as though he were the sole appellant, did not stop, but maintained his forward course and speed. In the words of the respondent, appellant "seemed to be asleep or something." Owing to the slippery condition of the pavement and con-

sequent loss of traction, respondent did not press his brake to the utmost, but took such precaution as was available to him to avoid a collision. Appellant proceeded across the center line of Beacon avenue, and then, instantly before the impact, swerved his car to the north, leaving a skidmark upon the pavement. This belated act was of no avail, however, and the two cars collided as described above. After the two vehicles had come to rest, it was found, upon examination, that appellant's car was in high gear. Respondent's car was damaged to the extent of three hundred dollars.

Appellant's version of the occurrence was markedly different. He testified that he stopped at the stop sign near the southwest corner and looked to his right but saw no car approaching from the south. He then proceeded into the intersection in intermediate gear, while keeping a lookout to his right. Arriving at the center of the intersection, he for the first time observed respondent's car approaching from the south, about two hundred feet away. He immediately applied his brakes and thus continued forward, at a speed of ten miles an hour, a distance of about fifteen feet, when he was struck by respondent's car coming through the intersection at a terrific speed, swerving therein to its left, and heading directly towards him. As remarked by the trial judge, if, at the time respondent was but two hundred feet away from the point of impact, the relative distances of the two cars from that point and the relative rates of speed at which they were then traveling were as testified by appellant, then respondent must have been driving at a speed of over a hundred miles an hour. This the trial judge said he did not believe. Appellant further testified that as a result of the collision his automobile was "knocked" directly north and finally struck a telephone pole, fire plug, and curb near the northeast corner of the intersection. He insisted that it was the *left* front end and side of his car that struck those obstacles. His attention being called to the photograph in evidence, showing plainly that it was the *right* side of his car which struck the obstacles, his explanation was that something must have been wrong with the method

of taking the picture. He also testified that the *right* front end of respondent's automobile was damaged, *indicating* that some portion of that side of the car had struck his car. His attention being called to another photograph in evidence, showing that it was the *left* front end of respondent's car which had been damaged, appellant's explanation was that in taking the picture one "could turn the negative over and make it a left front." The trial judge stated that he did not believe appellant's explanations. Appellant further testified that his car was worth seven hundred dollars before the accident and four hundred dollars afterwards, and that his repair bill for the damages done to it was $637.17, of which amount he paid one half and his insurance company paid the other half. The trial judge expressed his doubt as to the truth of that testimony.

In one particular, appellant's testimony was corroborated by a disinterested witness. The battalion chief of the fire department testified that, while looking out of a window of the fire station, facing north, he saw the appellant stop at the stop sign opposite him. The witness had no knowledge, however, of what occurred thereafter. Other testimony in the cause, equally disinterested, though not direct upon that particular question, and certain admissions by the battalion chief himself served to weaken the force of his earlier statement.

At the conclusion of the evidence, the trial court commented upon the testimony given by the appellant and expressed its view concerning it in these words: "Now, you just cannot testify that way in order to win a case and get by with it."

In his argument upon the appeal, appellant's counsel recognizes that respondent had the right of way, but argues (1) that respondent was guilty of contributory negligence, and (2) that he did not properly exercise the last clear chance to avoid the collision.

On the first question, the evidence of the respondent, if found to be true, absolved him from the charge of contributory negligence. The trial court's findings indicate emphatically that the court did believe respondent's version,

and in our opinion the findings are amply supported by the evidence. In such situation the findings will not be overturned.

Whether or not the appellant stopped at the stop sign, it was his duty, under the facts found by the trial court, to yield the right of way to the respondent. This he did not do, and his negligence in that respect was the proximate cause of the collision.

██ ██ On the second question presented by the argument, the evidence in this case, read in its entirety, furnishes no ground for holding that respondent failed to exercise the last clear chance to avoid the collision. The respondent was faced with a sudden emergency caused by the negligence of the appellant in crossing the center line of Beacon avenue in the face of the immediate presence of respondent's automobile.

The rule is that an automobile driver who, by the negligence of another and not by his own negligence, is suddenly placed in a situation of emergency and compelled to act instantly to avoid a collision or injury, is not guilty of negligence if he makes such a choice as a person of ordinary prudence placed in such a position might make, even though he did not make the wisest choice and one that would have been required in the exercise of ordinary care, but for the emergency. *Ruff v. Fruit Delivery Co.*, 22 Wn. (2d) 708, 157 P. (2d) 730, and cases therein cited.

In this instance, we think the respondent did what a person of ordinary prudence *might*, and most probably *would*, have done, under the same circumstances.

The judgment is affirmed.

BEALS, C. J., MILLARD, SIMPSON, and MALLERY, JJ., concur.