ROBERT E. McMAHON, *Appellant,* v. ALLISTER N. MacKINNON
*et al., Respondents.*[1]

*Neal Clark,* for appellant.

*McWalter, Barnett, Hennings & McLauchlan,* for respondents.

STEINERT, J.—Plaintiff brought suit to recover a sum of
money alleged to have been loaned to the defendants and
not repaid, though frequently demanded. Defendants, an-
swering, denied the material allegations of the complaint.
Trial before the court, sitting without a jury, resulted in
findings and conclusions adverse to the plaintiff, where-
upon judgment was entered dismissing the action. Plaintiff
appealed.

We may say at the outset that the issues in this case were
purely factual, requiring the trial court simply to deter-
mine on which side of the dispute the preponderance of the
evidence lay.

For a period of about eight years prior to 1943, appellant,
Robert E. McMahon, and respondent Allister N. MacKinnon,

[1]Reported in 183 P. (2d) 173.

to whom we shall hereinafter refer as though he were the sole respondent, had been acquaintances and fairly close friends. Respondent was employed as assistant purchasing agent by Seattle-Tacoma Shipyards, at a salary of $420 a month. Appellant was a member of the firm of McMahon & Smith Machine Company, a partnership composed of a group of individuals and doing an extensive machine shop business; he also had considerable other business interests in the city of Seattle and was a man of wide and varied experience.

During the spring of 1943 appellant, together with his partners in the machine company and other friends, became interested in promoting a shipyard venture, involving the reorganization and refinancing of North Pacific Shipbuilding Corporation, located at Anacortes. For that purpose, the investment of thirty-eight thousand dollars was required in order to secure control of that corporation. Appellant was an active agent, and apparently the leading spirit, in promoting the venture and obtaining the necessary funds therefor.

Early in the negotiations, and in pursuance of the contemplated plan, appellant approached respondent with the view of interesting him in the undertaking and, particularly, in having him become the general manager of the shipbuilding corporation.

Following many conferences and much discussion between appellant and respondent, as well as among all the parties interested in the prospective venture, negotiations for taking over the shipbuilding enterprise were concluded as contemplated. Appellant and four of his business associates and friends each invested six thousand dollars, and another of them the sum of two thousand dollars. Capital stock of the shipbuilding corporation was issued to them respectively in corresponding amounts. The remaining capital stock, amounting to six thousand dollars, was issued in the name of respondent. The circumstances and agreement under which that stock was issued to respondent constitute the source of this litigation and present the crux of the dispute here involved.

Appellant's complaint alleged simply that he loaned respondent the sum of three thousand dollars, which had not been repaid. His testimony was, in substance, that, in the negotiations for taking over the shipbuilding corporation, he placed with the respondent the sum of six thousand dollars, of which three thousand dollars was the money of James McMahon, appellant's brother; that, of this total amount, three thousand dollars was to be used by respondent for the subscription, purchase, and issuance of stock in that company to respondent himself, and the remaining three thousand dollars for stock to be issued to James McMahon, the brother; that the first three thousand dollars was a loan direct to respondent, to be repaid at some indefinite time in the future, "within a year or so," or "after a year," or "as soon as he was able to" pay it back; that, at the time the loan was made, respondent stated that he would procure and deliver to appellant a note in that amount, executed by himself and his wife, but this he never did; that on frequent occasions thereafter respondent acknowledged the existence of the loan and promised to repay it in full, but this he likewise failed to do; that, contrary to the initial understanding, respondent procured the issuance of the entire six thousand dollars worth of stock in his own name, and did not have James McMahon's portion thereof transferred to him until some time in December, 1943, when demand therefor was made upon respondent by appellant.

Respondent's version of the transaction was materially different. His testimony was substantially as follows: Appellant, having induced his associates and certain of his friends to enter into the proposed venture, sought to interest respondent therein in order to procure the latter's services as general manager of the shipbuilding corporation when reorganized. Respondent indicated an interest in the proposition, but told appellant emphatically that he had no funds to invest in the enterprise and did not feel justified in borrowing any money for that purpose, since he did not want to go in debt. Appellant then stated that, in connection with his other stock investment in the corporation, he himself would put up the money for the stock which was to be is-

sued to the respondent; further, that the money so advanced was not to be considered a loan, and was not to be repaid, until and unless the venture should prove to be a success. Respondent offered to execute a note or some other form of instrument to evidence this understanding, but appellant declined to accept it, saying that he was not loaning the money, that it was his own investment, and that they all could expect to profit from the venture. Upon that understanding and agreement, all of which was oral, respondent gave up his position with the Seattle-Tacoma Shipyards and became general manager of the North Pacific Shipbuilding Corporation, at an agreed salary of six hundred dollars a month. About that same time, appellant delivered to respondent a check for three thousand dollars, with which respondent was to purchase stock in the reorganized corporation in that amount, such stock to be issued to and held by respondent; concurrently therewith, appellant delivered to respondent another check, or cash, in the additional sum of three thousand dollars, which had been obtained from James McMahon, the brother, and for which an equivalent amount of stock was to be purchased for James. At the instance of appellant, the stock representing the entire six thousand dollars was initially issued to respondent in order to have it appear that he owned the same amount of stock as the other contributors, who had not been informed as to the arrangement between appellant and respondent. Subsequently, in the month of December, 1943, at the request of appellant, respondent transferred three thousand dollars worth of the stock, par value, to James McMahon. Appellant made no demand upon respondent for repayment of the initial three thousand dollars, or any part thereof, until about the time of commencement of this action in January, 1946.

We now proceed further with our own statement of the case as shown by the evidence. The North Pacific Shipbuilding Corporation operated for about a year and a half after its reorganization, and then became bankrupt. It never paid its stockholders any dividends.

Following the insolvency of the shipbuilding corporation, appellant and respondent, together with one Thompson, formed a partnership under the name of Chemical Process Cleaning Company, and engaged in the business of cleaning boilers on ships and other classes of heating equipment, as well as selling supplies therefor. Each of the partners invested in that enterprise the sum of five hundred dollars. The business apparently prospered in the beginning, but within a few months disagreements among the partners arose and feelings became strained. Appellant and respondent each made offers to buy out the other. Because of appellant's threat to throw the concern into receivership, respondent and Thompson concluded to sell to appellant. This they did, receiving for their interests in the partnership the sum of sixty-nine hundred dollars, of which something over three thousand dollars was realized by respondent. The only bearing that this partnership affair and its settlement have upon the present litigation is the fact that at no time, either before or at the time the settlement was made and the money paid thereunder, did appellant demand of respondent payment of the amount claimed to be owing him by respondent out of the shipyard venture. The trial court commented on this fact as being the convincing element of its decision.

One further fact bearing upon the dispute and suggestive of a possible reason for this lawsuit is that, after the dissolution of the partnership just mentioned, respondent engaged upon and is now employed in a chemical process cleaning business which for a time was a competitor of a similar concern then operated or controlled by appellant.

Upon the evidence as hereinbefore outlined, the trial court made findings of fact substantially in accord with respondent's version of the transaction. The record supports the findings by what we consider to be the great weight of the evidence. Appellant's own principal witness gave testimony which, in part at least, contradicted the appellant and favored the respondent. A reading of the record convinces us that the understanding between the parties was that the sum of three thousand dollars advanced by appellant for

the purchase of the stock to be held by respondent was not to be considered as a loan in the legal sense, but, rather, that it was an advancement made as an inducement to respondent to take over the management of the reorganized concern, and was not to be repaid except out of dividends when declared. As shown above, the concern never declared any dividends, but, on the contrary, became insolvent.

The case falls within the principle that, in an action tried to the court, the findings of the court will not be disturbed unless the evidence clearly preponderates against them. *Nicholson v. Nelson*, 27 Wn. (2d) 472, 178 P. (2d) 739, and cases therein cited.

In this case, the preponderance of the evidence is not against the findings, and these, in turn, fully support the judgment.

Affirmed.

MALLERY, C. J., ROBINSON, JEFFERS, and HILL, JJ., concur.