[No. 30335.   Department Two.   December 4, 1947.]

PERCY A. KELLY, *Respondent,* v. KITTITAS COUNTY *et al.,* *Appellants.*[1]

[1]Reported in 187 P. (2d) 297.

*Bounds & Splawn* and *Henry W. Wager,* for appellants.

*George W. Wilkins, D. V. Morthland,* and *Lane Morthland,* for respondent.

STEINERT, J.—Plaintiff brought suit against defendants to recover damages for personal injuries and demolition of property resulting from a collision between two motor vehicles. The action was tried to the court without a jury. At the conclusion of the evidence, followed by argument of counsel, the court took the matter under advisement and thereafter filed a memorandum decision awarding substantial damages to plaintiff. Defendants moved for judgment notwithstanding the decision or, in the alternative, for a new trial. The motion was denied, and the court thereupon made and entered findings of fact, conclusions of law, and judgment in favor of plaintiff. Defendants appealed.

The assignments of error relate to the findings made by the trial court and the refusal of the court to consider certain evidence introduced by the appellants.

The accident out of which this action arose occurred on what has been designated as the Inland Empire, or Cle Elum-Ellensburg, highway, at a point about eleven miles west of Ellensburg. The highway extends generally in an easterly-westerly direction and, in the locality with which we are here particularly concerned, consists of an oiled pavement nineteen feet, eight inches, in width and, bordering thereon, graveled shoulders four feet wide on the northerly side of the highway and six feet wide on the southerly side.

Proceeding from west to east and approaching the point where the collision occurred, the highway makes a considerable curve to the right, or to the south, on a slightly ascending grade; beyond that point, to the east, the curve is not as great. Proceeding from the opposite direction, that is from the east, toward the same point, the highway passes

through a cut in a hill for a distance of approximately eighty or a hundred feet and then emerges onto a filled portion of the road and over what is practically a straightaway for several hundred feet. Both sides of the cut are sufficiently high to obstruct the view of the highway to the east as one approaches from the west.

Extending along the outer edges of the graveled shoulders, westwardly from the westerly end of the cut and over the filled portion of the highway, are guardrails consisting of posts set firmly into the ground, fourteen feet apart, and two lines of heavy steel cables attached to the posts and strung laterally between them.

In the early afternoon of November 19, 1945, respondent, Percy A. Kelly, was driving his 1942 Buick automobile along the highway in an easterly direction, toward Ellensburg, at a speed of forty or forty-five miles an hour. At the same time, a 1941 Ford truck, owned by the appellant Kittitas county and being operated by its employee, appellant Henry C. Rosenberg, was proceeding westwardly from Ellensburg toward Cle Elum, at an estimated speed of thirty or thirty-five miles an hour. The truck, carrying approximately three yards of gravel, had a gross weight of about eight and one-half tons. Following the county truck at some distance was a smaller truck, described as a one and one-half ton farm truck, traveling empty. At a point near the westerly end of the cut referred to above, the farm truck overtook the county truck and was endeavoring to pass it. The pavement was dry, the weather was clear, and the visibility was good.

The driver of the county truck, Rosenberg, first observed respondent's Buick automobile approaching him when the county truck was at a point about midway in the cut or else near its westerly terminus, a distance of approximately four hundred eighty-six feet from the place where the county truck subsequently collided with the Buick automobile. At the time of Rosenberg's first observation of the automobile, the farm truck had not yet arrived alongside the county truck, nor had Rosenberg been made aware,

by signal or otherwise, of the presence of the overtaking vehicle. His first knowledge of the proximity or presence of the farm truck was when, hearing the roar of its motor, he glanced to his left and saw the cab of that vehicle even with his own. At that time, the two trucks had just emerged from the cut and were about opposite the first guard post situated on the northerly side of the highway, a distance of about two hundred twenty feet from the place where the subsequent collision occurred.

As respondent was proceeding eastwardly over the filled portion of the highway, he observed the two trucks emerging from the cut ahead of him and coming in his direction, along the two-lane paved highway. At that time, the trucks were almost abreast of each other, the front end of the farm truck being about five feet back, or east, of the front end of the county truck; the farm truck was then traveling along the inner, or southerly, lane of the highway, and the county truck along the outer, or northerly, lane. As nearly as we can determine from the record, the distance between respondent's automobile and the two approaching trucks at that time was five hundred feet, or more.

Fearful of a collision, respondent swerved his car over onto the six-foot shoulder on his right-hand side and then applied his brake, bringing the car to a stop parallel to, and within a few inches from, the guardrail on that side of the highway.

Seeing the farm truck alongside him, Rosenberg did not at once apply his brake nor change his course, but did "ease up" slightly on the gas feed while traveling a further distance of forty or forty-five feet. He gave as his reasons for this action (1) his immediate desire to determine whether the driver of the farm truck, on seeing respondent's automobile ahead, would drop back behind the county truck or, on the contrary, would accelerate his speed in an attempt to pass ahead of the county truck; and (2) the necessity of avoiding the "dynamiting" of his own truck, that is, applying his brake with such great and sudden force as to cause the truck, because of the heavy load of gravel, to jump the road and thereby precipitate a catastrophe.

When, in this short interval, it became apparent to Rosenberg that the driver of the farm truck was not lessening his speed, but instead was increasing it with the obvious intention of passing the county truck, Rosenberg pulled sharply to his right, partly onto the four-foot shoulder on the north side of the highway and began applying his brake with a gradual pressure.

About that same time, the farm truck, having increased its speed to approximately fifty miles an hour, veered to its left, heading directly toward respondent's automobile, but, by swerving back to the right in the nick of time, managed to miss that vehicle by just a few inches. However, in pulling back onto its right-hand side of the road, the farm truck "clipped" the county truck, that is, a portion of the farm truck struck a glancing blow against the left front fender and front bumper of the county truck. In this manner, the driver of the farm truck maneuvered his vehicle out of a critical situation and, having done so, proceeded rapidly forward out of sight and has never since been located or identified.

Unfortunately, however, the county truck, which at the time it was "clipped" by the farm truck was traveling at a decreased speed along the northerly shoulder near the guardrail on that side, struck one of the posts and, being deflected from its course, veered to the left in a southwesterly direction. The parked automobile was standing on the opposite side of the highway about thirty feet ahead, or westerly, of the post with which the county truck had come in contact. Either because of fright or because of the force with which the truck struck the post, the driver Rosenberg lost consciousness, and the truck, being thus out of control, traveled in an arc southwestwardly across the highway a distance of sixty feet and, after colliding with the automobile, turned upside down on the hood of the standing vehicle. As a result, the automobile was badly damaged, and respondent sustained serious injuries.

While at the scene of the accident and shortly after its occurrence, respondent made repeated statements to, or in the hearing of, one of his own witnesses, a state patrol-

man, that he definitely did not hold Rosenberg responsible for the accident. That same evening, at the hospital in Ellensburg, where both respondent and appellant Rosenberg had been taken, respondent told Rosenberg not to worry about the matter, that there was nothing the latter could have done to avoid the accident, and that Rosenberg had probably done the best he could under the circumstances.

During the course of the trial, the court visited the scene of the accident, and, at the conclusion of the evidence, but before argument of counsel had begun, orally made what is termed in the record a "statement by the court," giving a resume of the court's tentative view of the facts and the inferences to be drawn therefrom. The court began by stating that there was very little conflict in the testimony and that the issue was really one of law.

The question for decision posed by the court was whether Rosenberg, the driver of the county truck, was guilty of negligence in doing what he did or in failing to do what he should have done, under the existing circumstances. The court accepted it as an established fact that, just before the moment of collision between the county truck and respondent's automobile, the farm truck had come in contact with the front end of the county truck. However, the court was of the opinion that the impact was not of sufficient force to push or knock the county truck over against the post on the right-hand shoulder; rather, in the opinion of the court, when Rosenberg saw the other truck coming too close to his side, he naturally pulled over to his right but, in doing so "pulled over a little bit too far and hit that post," or else turned the truck toward the rail as a result of excitement created when his fender was struck by the farm truck.

The court then stated that negligence could not be predicated on the fact that Rosenberg had not, by the use of his mirror, seen the farm truck approaching him from the rear, since, in any event, he would have had the right to assume that the driver behind him would obey the rules of the road. The court also stated that the preponderance of the

evidence was to the effect that the two trucks had come abreast of each other when about half-way through the cut, and that Rosenberg was at that time aware of the presence of the other truck.

Throughout its statement the court gave expression to the thought that the situation was one of emergency, and that therefore Rosenberg was required "to do that which under the circumstances he could see his way clear to do to avoid an injury to Mr. Kelly." The court then expressed the view that, since Rosenberg saw the truck abreast of him and knew that traffic was approaching from the opposite direction, and by a glance could have seen that Kelly had pulled over to his right-hand side as far as possible and had stopped, Rosenberg should also have at once slowed down and have brought his truck to a stop, as he testified he could have done within a distance of forty or fifty feet. In failing to take such steps, Rosenberg, in the opinion of the court, "did not act as probably four out of five men would have acted." However, it is plain that, when the court was making its "statement," it entertained some doubt as to whether Rosenberg's acts or failure to act constituted negligence under the existing emergency. We quote a portion of the court's language:

"On the other hand, I am aware of this fact—I am using myself as a sort of reaction on it,—Sometimes to avoid an accident by stepping on the gas and speeding up to give the other man a clearance,—but I know very well that my own inclination is always to put on the brakes when an emergency comes up. If I could prevent something by stepping on the gas, in a moment of emergency, I would never think to do it; my foot would go to the brakes, I am sure; so to what degree are we to hold this man accountable? He did what he deemed best under the circumstances, and he was guilty of nothing about his driving, he was driving carefully; there was no obligation to watch behind, and, in fact, no special obligation to watch except to the front, and that was all clear, and he undoubtedly did not observe the other car either coming or going as a lot of people would. But I cannot predicate any negligence on that because there was no duty resting upon him; but I do say that this accident, in my judgment, could and would have

been avoided had Mr. Rosenberg, at the moment he became aware of that other car abreast of him, had he slowed down; he could have brought his truck to a stop within, he says, forty or fifty or sixty feet—forty or fifty feet, I guess it is; but how many of us can think clearly, confronted with an emergency like that?"

A little later in the "statement," the court said:

"Now, it is a tremendously close question. He [Rosenberg] did not have very much time to act, very little time to act. Had he immediately slowed up, I think it would not have occurred. However, I would hate to say what I would do in that case myself."

The court's conclusion upon all the facts, however, was that it would have been the natural thing for the driver of the county truck to slow up and allow the overtaking truck to pass by, and that his failure to do so was negligence. In arriving at that conclusion, the court stated that it would disregard the testimony regarding Kelly's declarations absolving Rosenberg from liability.

A day or two later, the court filed a written memorandum decision, which was prefaced with this statement regarding the alleged negligence of Rosenberg:

"The determination of this question has not been an easy one because the action complained of occurred in an admitted emergency and no man, acting under an emergency is held to that degree of care which he should have exercised under normal conditions. In other words, he was suddenly confronted with a serious condition and his action or lack of action must be determined having in mind this emergency."

In analyzing the evidence, the court stressed the following as facts: Rosenberg was aware of the farm truck passing him; at the same time, he saw respondent's car come to a stop on the opposite side of the highway; he could have brought his truck to a stop a considerable distance from respondent's automobile, but instead of doing so maintained his speed, wondering what the driver of the farm truck would do; Rosenberg continued on his course, pulling far to the right near the guardrail; although his truck was struck by the farm truck, it was not with sufficient violence

to force it against the guard post; his coming in contact with the post was due to the fact that, in the excitement and emergency, he had pulled too close to the guardrail and, in consequence of striking the post, had lost all control, and thus the truck veered over to the opposite side of the road.

From these facts, the court concluded that an ordinarily prudent man, in such circumstances, would instinctively have stopped his truck. At the same time, the trial judge stated:

"I am aware that there is very little time to act and if the Kelly car had been approaching instead of being at a stop I would exonerate the driver of the County truck from all negligence."

The substance of the court's memorandum decision is contained in the paragraph which reads:

"As stated, I am aware the situation arose suddenly and there was not much time within which to act, but with the Kelly car in full view it seems to me there was but one normal reaction on the part of the driver of the County truck, namely to stop his truck and not bring it abreast of the plaintiff's [respondent's] car which he admits he could have done were it not for his uncertainty as to what the passing truck would do."

We have given the trial court's memorandum decision, as well as its prior oral statement, so much space and attention because, in his brief, respondent recommends that we carefully consider the memorandum decision. Being included in the statement of facts, it should of course be considered. *Forbus v. Knight*, 24 Wn. (2d) 297, 163 P. (2d) 822; *Muscek v. Equitable Sav. & Loan Ass'n*, 25 Wn. (2d) 546, 171 P. (2d) 856. For the same reason, the prior "statement by the court" should also be considered.

In its formal findings of fact, the trial court stated that Rosenberg had so carelessly, recklessly, and negligently operated the county truck as to cause it to run against the guardrail on the northerly side of the highway and then careen to the opposite side where it collided with respondent's automobile; that when respondent saw the two trucks

approaching him abreast, he, being aware of the danger, immediately drove his automobile to his extreme right, or southerly, side of the road and stopped; that when the farm truck drew alongside the county truck, Rosenberg likewise became aware of the dangerous situation and had time and distance within which to slow or stop his truck and avoid a collision; that, instead of doing so, Rosenberg, although aware of the danger, had continued to drive the county truck at the same, or nearly the same, rate of speed and on its same course; and that Rosenberg's acts and failure to act were contrary to what a reasonably prudent man would have done under the same circumstances.

■ We proceed upon the rule, established in this state, that, in an action tried to the court, the findings of the court will not be disturbed unless the evidence clearly preponderates against them. *Nicholson v. Nelson*, 27 Wn. (2d) 472, 178 P. (2d) 739; *McMahon v. MacKinnon*, 28 Wn. (2d) 442, 183 P. (2d) 173.

In our opinion, however, the evidence clearly preponderates against some of the court's findings and is at variance with some of the court's conclusions.

We believe, as the trial court evidently believed and repeatedly declared in its tentative oral statement and in its written memorandum decision, that the facts in this case presented a situation of sudden emergency. At the risk of some repetition, we depict the situation:

As the farm truck drew alongside the county truck somewhere between the middle and the westerly end of the cut, both trucks were about four hundred eighty-six feet distant from the place where the collision occurred, and a still greater distance from respondent's automobile. Going westwardly out of the cut, Rosenberg, the driver of the heavy county truck, became aware of the presence of respondent's automobile. At a point about two hundred twenty feet from the place of the collision, and a slightly greater distance from respondent's automobile, Rosenberg suddenly heard the roar of another truck alongside him and observed it passing his own truck at a high rate of speed; at the same time, he realized that the two trucks, together, were occupy-

ing the entire two-lane highway, leaving at most the south shoulder of the highway for respondent's automobile. It was from this point that there began the swift series of occurrences which culminated in the collision of the county truck and respondent's automobile.

In the three or four seconds elapsing immediately prior to the time of the collision, Rosenberg at first did not slow down because, as he testified, he was not certain whether the driver of the farm truck, on seeing respondent's automobile, would pull back behind the county truck, or, on the contrary, would speed up in an effort to pass; furthermore, he did not want to foreclose either of these opportunities to the farm truck by accelerating or decreasing his own rate of speed; also, he feared an immediate stop would "dynamite" his own truck. After traveling a distance of some forty or forty-five feet, it became evident that the farm truck was going to pass, and Rosenberg then pulled to his right onto the graveled shoulder, at the same time "easing up" on the gas. During this time, the driver of the farm truck must have observed respondent's automobile, for, as respondent testified, the farm truck veered from a course directly in line with his automobile to a course bearing sharply to the farm truck's right, or to the north side of the highway. In so doing, the farm truck narrowly missed respondent's automobile and "clipped" the left front fender and bumper of the county truck, just before it struck the post.

Whether the farm truck's impact knocked the front of Rosenberg's truck over against the post or whether it only slightly deflected the angle of his front wheels, or whether, in the excitement caused by being struck by the farm truck, Rosenberg pulled further to the right, is, in our opinion, immaterial. In either or any event, Rosenberg was, from the moment he observed the farm truck abreast of him, confronted with a sudden peril and was compelled instantly to determine his course of action. This he did by his resolution to maintain momentarily his existing speed and direction until he could ascertain what the farm truck would do.

In making this choice, he did what any reasonably prudent driver might have done under the circumstances.

Bearing in mind that at all times the trucks were in motion, and in view of the dangerous manner in which the unknown truck was traveling, Rosenberg's actions were of necessity under the pressure of a situation which could easily have resulted in a three-vehicle collision, and which clearly constituted an "emergency situation," solely caused by the negligence of the farm truck. We think that the facts, as well as the remarks of the trial court in its initial statement and in its memorandum opinion, clearly call for such conclusion.

Parenthetically, we may say that, in acting as he did, Rosenberg literally complied with Rem. Rev. Stat., Vol. 7A, § 6360-77 [P.P.C. § 295-5], which provides that any person driving a vehicle upon a public highway and being overtaken by any vehicle proceeding in the same direction shall keep to the extreme right-hand side of such public highway and shall not accelerate his speed until the overtaking vehicle shall have resumed a driving position and speed ahead of him.

Respondent contends in his brief that Rosenberg was guilty of negligence because he drove the county truck into the guard post. Respondent attempts to substantiate this position with the testimony of his witness, a state patrolman, who testified that, on examining the north shoulder of the road near the scene of the accident, he observed a track, which appeared to him to have been made by the right front wheel of the county truck, leading from the pavement onto the gravel shoulder and in a direct line to the post which was struck. From this fact, respondent concludes that Rosenberg negligently drove into the post.

We do not agree with this conclusion, and further are of the opinion that the facts as stated by the respondent do not in this situation evidence any negligence on the part of the driver of the county truck. Rosenberg was acting, in an emergency, in order to avoid a three-vehicle collision, and in so acting he endeavored, under more pressing circum-

stances, to do what respondent had already done, namely, to pull his truck off the highway and as close to the guardrail as possible. It is not certain whether he struck the guard post in consequence of his own truck being deflected from its course when struck by the farm truck, or whether that result was occasioned by fright and excitement induced by the unexpected action of the farm truck. In either event, he cannot, under the circumstances shown, be charged with negligence in that respect.

■ The rule of "sudden emergency," as it has been expressed by this court, is that an automobile driver who, by the negligence of another and not by his own negligence, is suddenly placed in a situation of emergency and compelled to act instantly to avoid a collision or injury, is not guilty of negligence if he makes such a choice as a person of ordinary prudence placed in such a position *might* make, even though he did not make the wisest choice or one that would have been required in the exercise of ordinary care, but for the emergency. *Ruff v. Fruit Delivery Co.*, 22 Wn. (2d) 708, 157 P. (2d) 730; *Mahoney v. Canafax*, 23 Wn. (2d) 869, 162 P. (2d) 903.

Under this rule, the course taken by Rosenberg was adopted by him because of an emergency, and was one which *might* have been taken by an ordinarily careful and prudent driver placed in the same position. Under these circumstances, Rosenberg cannot be held guilty of negligence.

As stated above, the trial court expressed the view in its memorandum decision that if respondent's automobile had been approaching, instead of being at a stop, the court would have exonerated the driver of the county truck from all negligence. We think the preponderance of the evidence and the conclusions to be drawn therefrom establish the fact that respondent's automobile was not stopped until the county truck was within *at most* two hundred fifty feet of the place of collision. But, assuming that respondent's car was completely stopped, as found by the court, or even was coming to a stop, still, in our opinion, Rosenberg was con-

fronted with a sudden emergency and acted as any reasonably prudent driver might have acted under the same circumstances. It will be remembered that respondent's automobile, when stopped, was entirely off the highway, or at least nearly so. Seeing it in that position, Rosenberg pulled onto the shoulder on the opposite side, leaving almost the entire paved portion of the road to the passing truck. That truck did clear respondent's automobile, and had it not been for the fact that in the emergency Rosenberg drove a little too far to the right, or was deflected in that direction, causing him to strike the post, the collision with respondent's automobile would never have occurred.

In whatever aspect we consider the matter, we are convinced that Rosenberg was confronted with a situation of emergency, created solely by the negligence of the driver of the farm truck, and that the course which Rosenberg took in the operation of the county truck was such as any reasonably prudent driver under the same circumstances might have taken.

The judgment is reversed, with direction to dismiss the action.

MALLERY, C. J., BEALS, ROBINSON, and JEFFERS, JJ., concur.