[No. 29911.   Department One.   August 8, 1946.]

LOUIS J. MUSCEK *et al., Respondents,* v. EQUITABLE SAVINGS AND LOAN ASSOCIATION *et al., Appellants.*[1]

[1]Reported in 171 P. (2d) 856.

*Burkey & Burkey,* for appellants.

*Harry H. Johnston,* for respondents.

MALLERY, J.—This case comes to us on a complicated and disputed set of facts. In 1939, plaintiffs owned certain unimproved land in the city of Tacoma, from which they conveyed fourteen building sites to the defendants Rauh. Contemplating the construction of small dwellings thereon, the Rauhs took construction loans from the Equitable Savings and Loan Association, an Oregon corporation doing business in this state, giving in return a first mortgage upon each of the sites. The plaintiffs' interest in each site was evidenced by a note secured by a second mortgage.

Rauh's venture did not prosper. By the end of the first year, all of the mortgages were past due, and it became evident that something need be done to avoid foreclosure. On December 27, 1940, plaintiffs met in Tacoma with the Rauhs and with officers of the Equitable Savings and Loan Association, the Portland Mortgage Company (an Oregon corporation having the same president and shareholders as Equitable), and the H. A. Briggs Company, a Washington corporation acting as Equitable's loan agent in the Tacoma area. It was there decided that the Briggs Company should take title to the land as trustee and would thenceforth be

charged with the responsibility of completing the houses then under construction and would administer a revolving fund of two thousand dollars to that end.

It was further provided that, after twelve months, the trustee could convey the unsold tracts to the holder of the first mortgages, from which there would be no right of redemption. By the terms of this agreement, the plaintiffs' right to the proceeds of the sale of the houses was junior to the first mortgages and all claims for building and selling costs. It was contemplated that the Portland Mortgage Company would take an assignment of the first mortgages from Equitable. For this reason, Ralph Cake, president of both Oregon corporations, signed only in behalf of the former. No one signed for Equitable.

On April 24, 1945, all of the houses having been sold to third parties, the plaintiffs filed their complaint in the superior court for Pierce county. Incorporated therein by reference was the agreement of December 27, 1940. The complaint further alleged that the defendants had conspired to do nothing towards completion of the houses during the twelve-month-limitation period; that, upon expiration of the twelve-month period, the defendants began to complete and to sell the heretofore uncompleted dwellings; that, on January 23, 1943, a demand for an accounting was made upon the defendants and forwarded to them by registered mail; that, despite many subsequent requests for an accounting on the part of the plaintiffs and promises to furnish one on the part of the defendants, no accounting had been forthcoming. The complaint concluded with the following prayer:

"Wherefore, plaintiffs pray that the defendants Equitable Savings & Loan Association, Portland Mortgage Co., and H. A. Briggs Co., be required to account to plaintiffs for all of the proceeds from the sale of all the dwelling units, and that all sums in excess of the principal and interest invested by the said defendants be applied to the judgment of the plaintiffs *and* that they recover from each and all of said defendants the sum of $5075.00 with interest at six per cent. from June 19, 1939, and $600.00 attorney's fees, and all costs

incurred herein, and for such other or further relief as the court may find just." (Italics ours.)

Personal service was had April 25, 1945, in the city of Tacoma, upon all defendants except the Portland Mortgage Company, which was personally served in Portland, Oregon, on April 26th. The last day for the appearance of the defendants served in Tacoma was May 15, 1945, while the last day for the appearance of the Portland Mortgage Company was June 25, 1945. On May 1, 1945, the Tacoma law firm of Burkey & Burkey was retained to represent the three corporate defendants. On August 30, 1945, no written appearance having been served upon them nor entered in court, the plaintiffs took an order of default. Upon the same day, the court heard their evidence and entered findings of fact and conclusions of law, pursuant to which, on August 31, 1945, he entered the following judgment:

"This matter came on regularly for hearing on the 30th day of August, 1945, plaintiff Louis J. Muscek being present in Court and being represented by his attorney, Harry H. Johnston, and the defendants Equitable Savings and Loan Association, a corporation; Portland Mortgage Company, a corporation; H. A. Briggs Company, a corporation; and George F. Rauh and Louise M. Rauh, husband and wife, not being present nor being represented by counsel, and being in default for want of appearance in said action and an order of default having been duly and regularly entered as provided by law, and the Court having entered its Findings of Fact and Conclusions of Law.

"THEREFORE, IT IS ORDERED AND ADJUDGED, That the above named plaintiffs, Louis J. Muscek and Joyce C. Muscek do have and recover judgment against the above named defendants, Equitable Savings and Loan Association, a corporation, Portland Mortgage Company, a corporation, H. A. Briggs Company, a corporation, in the sum of $6075.00 and interest from the 19th day of June 1939, together with costs incurred herein."

On October 3, 1945, Mr. Burkey appeared on behalf of the three corporate defendants, filed an answer and a statement of account, and moved to vacate the default judgment. The motion came on for hearing upon affidavits November 26, 1945, and, on December 4, 1945, the court entered an order

denying the motion. All of the defendants except the Rauhs have joined in this appeal from the order denying the motion to vacate the judgment.

■ Personal service upon the Portland Mortgage Company outside of the boundaries of the court's jurisdiction was equivalent to service by publication, Rem. Rev. Stat., § 234 [P.P.C. § 2-33], and no jurisdiction over its person was acquired unless it actually appeared. *State ex rel. Hopman v. Superior Court,* 88 Wash. 612, 153 Pac. 315.

Appellants' first assignment of error relates specifically to the appearance made by the Portland Mortgage Company in moving to vacate the judgment. Conceding that the appearance in question may be deemed general, for reasons which we find unnecessary to discuss, appellants argue that such general appearance merely puts them into court in that and in all future proceedings, but that it does not relate back so as to waive the defect of lack of jurisdiction over them in entering the default decree. In support of this contention, appellants rely upon *Woodham v. Anderson,* 32 Wash. 500, 73 Pac. 536, and *Bennett v. Supreme Tent etc. Maccabees,* 40 Wash. 431, 82 Pac. 744, 2 L. R. A. (N. S.) 389. The *Woodham* case, *supra,* was an action to foreclose a delinquency tax certificate. Service by publication led to a default judgment. Subsequently, defendants filed a motion to vacate. It was held that in filing their motion, the defendants had made a general appearance, but that the judgment previously entered was void and that:

"But what had theretofore been done was done without jurisdiction. . . . Their general appearance at that time did not validate the void judgment, but simply brought them into court, without the necessity of new process, to be dealt with thereafter as the law of the case required."

Both the *Bennett* case, *supra,* and *French v. Ajax Oil & Development Co.,* 44 Wash. 305, 87 Pac. 359, follow and apply the rule of the *Woodham* case, *supra.* The *French* case, *supra,* concerned a default judgment against the defendant in an action to recover a money judgment and to appoint a receiver. The defendant appeared specially to set aside the default, which motion was denied. Thereafter, the defend-

ant specially appeared to ask the court to open and vacate the judgment of default and to grant leave to defend on the merits. This motion was overruled and the defendant appealed. In remanding the case with instructions to vacate the default judgment and to proceed with the case on the merits, this court said:

"It is contended, however, by the respondent that, conceding the summons to have been insufficient, such want of service was cured by the appearance of the appellant in the case in moving to vacate judgment, and asking to file an answer upon the merits. The record shows that the appearance, so far as moving to set aside the default judgment was concerned, was a special appearance without any question; and *while the appellant is bound by his general appearance in any order of the court made subsequent to such general appearance, it does not bind him as to orders or judgments of the court made without jurisdiction before his appearance.*" (Italics ours.)

■■ While the weight of authority in the United States is apparently contrary to the cases discussed above (see 3 Am. Jur. 806, Appearances, § 37), the *French* case, *supra,* has never been overruled in this jurisdiction and is controlling. Upon its authority we hold that, having been personally served outside of the state and having failed to appear, the default judgment taken against the Portland Mortgage Company was void. We further hold that, having made a general appearance in moving to vacate that judgment, they are now before the court for all future proceedings in this cause.

■ The affidavits and counteraffidavits, submitted in the hearing of the motion to vacate, are replete with averments and contradictions of oral agreements between Mr. Burkey and Mr. Muscek concerning an alleged oral appearance in the case by the former. One of the assignments of error is to the effect that the violation of these oral agreements constitutes fraud, which under the provisions of Rem. Rev. Stat., § 464 [P.P.C. § 71-1] (4), is grounds for the vacation of the judgment. This assignment of error is without merit. In his memorandum opinion, the trial judge had this to say:

"In their reply affidavits Muscek and Johnston flatly deny any such conversation or stipulation and assert that they did not know of Burkey's connection with the case until after the entry of the judgment herein. The three attorneys just mentioned have practiced at this bar for many years and are esteemed by this Court. The Court regrets this dispute of fact between them, but does not feel called upon to decide the dispute. Rule 10 of the General Rules of the Superior Court precludes the Court from passing on disputed oral stipulations of counsel, as follows:

" 'Rule 10. No agreement or consent between parties or attorneys in respect to the proceedings in a cause, the purport of which is disputed, will be regarded by the Court . . . unless the evidence thereof is in writing and subscribed by the attorneys denying the same,'

"Under this rule the Court must disregard all testimony about the disputed oral agreement. There is no other evidence of claimed fraud."

It is argued by the appellants that the aforementioned rule of court is not properly before us, since it appears in the trial court's memorandum opinion and nowhere else in the record; that the memorandum opinion does not become a part of the record for any purpose except to express, informally, the views of the trial court upon the cause before him.

This memorandum opinion was, pursuant to Rule 9 (5), Rules of the Supreme Court, 18 Wn. (2d) 11a, included as a part of the statement of facts.

▮ A memorandum decision of the trial court, if included in the statement of facts, will be considered by this court upon appeal. *Forbus v. Knight,* 24 Wn. (2d) 297, 163 P. (2d) 822; *Mullin v. King County,* 19 Wn. (2d) 1, 140 P. (2d) 789. We therefore take cognizance of Rule 10, General Rules of the Superior Courts, 18 Wn. (2d) 56-a, to hold that the rule in question is a salutary one, and that it was properly applied in this instance.

Rem. Rev. Stat., § 464 [P.P.C. § 71-1] provides that:

"The superior court in which a judgment has been rendered, or by which or the judge of which a final order has been made, shall have power, after the term [time] at which

such judgment or order was made, to vacate or modify such judgment or order:   .  .  .

"(3)  For mistakes, neglect, or omission of the clerk, or *irregularity in obtaining the judgment or order;*  . . ." (Italics ours.)

■ In *In re Jones' Estate,* 116 Wash. 424, 199 Pac. 734, quoting from 1 Black, Judgments (2d ed.), § 329, we said:

" 'The power to vacate judgments, on motion, is confined to cases in which the ground alleged is something extraneous to the action of the court or goes only to the question of the regularity of its proceedings.  It is not intended to be used as a means for the court to review or revise its own final judgments, or to correct any errors of law into which it may have fallen.  That a judgment is erroneous as a matter of law is ground for an appeal, writ of error, or certiorari, according to the case, but it is no ground for setting aside the judgment on motion.' "

■ Seeking to define and to differentiate between error of law and irregularity, we said in *In re Ellern,* 23 Wn. (2d) 219, 160 P. (2d) 639:

"A definition of irregularity was adopted by this court in the case of *Merritt v. Graves,* 52 Wash. 57, 100 Pac. 164, as follows:

" 'An irregularity is defined to be the want of adherence to some prescribed rule or mode of proceeding; and it consists either in omitting to do something that is necessary for the due and orderly conducting of a suit, or doing it in an unseasonable time or improper manner.' "

■ The established procedure in this jurisdiction in actions for accounting is for the court to first try the question whether an accounting will lie.  If that question be answered in the affirmative, the court then enters an interlocutory order that the accounting be had.  In view of this principle, it is contended by appellants that, upon their failure to appear in this cause, the court was authorized to enter by default a judgment ordering only that an accounting be had, and that, in entering a final money judgment against them, the court proceeded irregularly.  This assignment of error is well taken.

We quote *in extenso* from *Fincham v. Pinkham & Co.*, 133 Wash. 517, 233 Pac. 913, where an accounting was sought to recover certain commissions or profits allegedly due the plaintiffs. The prayer was almost identical with that in the case at bar.

"'Wherefore, plaintiff prays that the defendant be required to account to the plaintiff by giving the cost of all merchandise in which the plaintiff was interested, the sale price of the same, and all moneys received by the defendant and all sums due to the plaintiff and defendant from third parties, and that it be ordered to pay over to the plaintiff any balance found due the plaintiff, and that upon its failure so to do, that the plaintiff do have and recover of and from the defendant the sum of eight hundred dollars ($800), together with costs and disbursements herein expended.'"

In reversing and remanding the cause with directions to permit the appellant to make a thorough examination of the books, and to thereafter take the account, the court said:

"When the case came on for trial, the plaintiff proceeded, in the main, to establish his right to an accounting, apparently relying upon the general rule that in such a case the court will first determine whether an accounting should be had, in which preliminary hearing only evidence bearing on the right to an accounting should be received, and not that relating to the amounts due, except as such fact may bear upon the question of the right to the accounting. . . . The managing officer of the respondent corporation was, by the plaintiff, called to the stand and first examined with reference to matters thought to show a right to the accounting. Plaintiff's evidence along the same line was then received, but considerably enlarged by cross-examination. The managing officer of the respondent corporation was then recalled and asked if he had brought the books covering the accounts, to which he replied that he had and they were there on the table. To a remark made by counsel, the court said, referring to the books:

"'You have them here and you may examine them now . . . Counsel may take up the matter and examine them right now.

"Upon this ruling being made, the following occurred:

"'Mr. Woods: I will examine the witness about them now, but I object on the ground that it is not reasonable time. Counsel stated here in court some time ago that they took

two or three weeks to make up a statement. They have never shown us any of the books in this matter, or any of the letters in regard to cost prices.

" 'The Court: They are here now. Inspect them now. Exception . . .

" 'Mr. Woods: I think the court should order a reference or fix a future date for an accounting to hear it, and give us time to examine the papers and files and make an examination of the books with reference to these transactions. We have endeavored, by motion and otherwise, to get the information, and the court stated we would be given plenty of time, all the time we wanted, at the trial, and we now ask that the court direct that an accounting be had between these parties. I would like to show the court some authorities on that. There are two judgments to be given in this kind of a case, one to establish what the nature of the contract was between the parties and then the ordering of an accounting . . .

" 'The Court: You should ask a witness and they should produce the statement.

" 'Mr. Woods: Very well. I will note an exception for not having proper time for an inspection of the papers and books, and also an exception to the failure of the court to make an order directing an accounting and setting a future date for hearing and giving us reasonable time.'

"It seems to us that the trial court erred in the ruling complained of. It is the well established practice, where an accounting is demanded and the right thereto is denied, to first settle and determine that issue, and then, if the right thereto be established, to order a reference, or to take the account before the court at a future date to be determined. It is manifest that, although the appellant had filed interrogatories and, by direction of the court, had submitted a bill of particulars, yet, in so doing, he was without the benefit of the books, records and information which were in the possession of the respondent and to which he was entitled to assist him in taking the accounting. This is accented by the fact that appellant's preliminary motion for inspection of the books was allowed only to the extent of requiring the books to be produced at the trial. When equity undertakes an accounting, it will go into the question thoroughly and, so far as possible, ascertain all of the facts and decree absolute justice between the parties. It is manifest that, where numerous transactions are involved, running over a period of considerable time, and recovery is to be based upon profits

accruing from each of such transactions, something more is needed than a cursory examination of a set of books in court, or even out of court during the hours when the court is not in session while the case is progressing. Probably the services of an expert might be necessary, but, whether so or not, such time should be given as, under all of the circumstances of the case, will assure ample opportunity to develop the full truth. This was not the refusal to grant a continuance in the ordinary sense, but a denial of a substantial right."

■ Since, in an action for an accounting, we are thus committed to the procedure of first rendering a decree that the defendant be compelled to account, we hold that the entry, *instanter*, of a money judgment in favor of the respondents was premature and therefore irregular. We further hold that the motion to vacate was proper and should have been sustained.

The Portland Mortgage Company, not being subject to the jurisdiction of the court below, and having failed to appear therein to defend in this cause, is not bound by the default judgment entered against it. Having subsequently made a general appearance, that appellant is now before the court for any future proceedings. As to that appellant, the judgment is reversed and remanded to the court below, with directions to make an order providing for a hearing, at a future date fixed in the order, to determine whether the Portland Mortgage Company shall be compelled to account to the respondents.

Being within the jurisdiction of the court and having failed to make a timely appearance, the appellants Equitable Savings and Loan Association and H. A. Briggs Company will not be heard to say that an accounting against them does not lie. That question is foreclosed by their default.

The court below is further directed, upon determination of the question whether the Portland Mortgage Company be compelled to account to the respondents, then to make an order adjudging that all of the appellants account to the respondents, and, in the event that no accounting be found to lie from the Portland Mortgage Company, that the appel-

lants Equitable Savings and Loan Company and H. A. Briggs Company do account to the respondents; and to further order a reference or to take the account at a future date to be determined by him and announced in the order.

Should the appellants then fail to appear at the date so fixed, the court may, in accordance with regular procedure, then enter the money judgment requested in the prayer.

The order of default heretofore entered will not be disturbed except as to the Portland Mortgage Company, which will be stricken from the order.

The order denying the motion to vacate is reversed, and the cause remanded for further proceedings in conformity herewith. Neither party will recover costs.

BEALS, C. J., STEINERT, MILLARD, and SIMPSON, JJ., concur.

