[No. 19175-3-III. Division Three. March 8, 2001.]

HOUSING AUTHORITY OF GRANT COUNTY, *Appellant*, v. LYNN
NEWBIGGING, *Respondent*.

*Harold J. Moberg* and *William A. White* (of *Moberg Law Firm*), for appellant.

*Jerry L. Sorlien*, for respondent.

BROWN, A.C.J. — The Housing Authority of Grant County (Housing) obtained an unlawful detainer default judgment against Lynn Newbigging and subsequently evicted her. The trial court vacated the judgment and awarded Ms. Newbigging terms of $1,650. Housing appeals, alleging the trial court abused its discretion in vacating the default judgment and in awarding terms. We affirm, and in so doing adopt a rule that in an appropriate case, terms may be awarded to the party moving to set aside a default under CR 60(b).

## FACTS

Ms. Newbigging rented a residence from Housing on a month-to-month lease from January 1986. Rent payments were due the first of each month. Rent in 1999 was $465 per month. On July 20, 1999, Housing served Ms. Newbigging with a three-day notice to pay July's rent or vacate. Alleging she did not pay the rent as demanded, on July 30 Housing served her with an eviction summons and complaint for unlawful detainer, a motion for hearing on damages, and a note for motion docket. The record does not reflect that Housing sought and obtained a show cause order pursuant to RCW 59.18.370. The eviction summons demanded a written response by 5:00 p.m. on August 6. The complaint for unlawful detainer alleged nonpayment of July's rent.

On August 2, 1999, Ms. Newbigging responded by having her father pay (evidenced by receipt) her July rent of $465 plus a $20 late charge and a $250 attorney fee to Moberg Law Firm, counsel for Housing. On August 3, Moberg Law Firm sent Ms. Newbigging a letter with a note for motion docket notifying her that the unlawful detainer had been set for the August 13 motion docket. The letter stated the matter would be stricken from the docket if Ms. Newbigging paid her August rent by August 5.

Ms. Newbigging paid $250 directly to Housing on August 11, $40 on August 25, and another $180 on August 26. The total of $470 constituted a $5 overpayment of August rent. Housing did not issue any pay or vacate notices, nor did it initiate another unlawful detainer action with regard to the August rent. Ms. Newbigging did not appear in court on August 13. The trial court continued the matter to September 3. Counsel for Housing filed a note for motion docket. Again, the record does not contain a show cause order.

On August 13, 1999, counsel for Housing sent Ms. Newbigging a letter acknowledging receipt of the July rent and attorney fees. The letter went on to state that counsel had decided to continue the unlawful detainer matter until September 3, to "allow" Ms. Newbigging "to get current" on her rent for August and September. Clerk's Papers (CP) at 38. The letter (which referenced a note for motion docket) stated that failure to bring the rent current by September 3, would result in a default judgment and writ of restitution.

On September 3, Housing obtained a default judgment of $760, consisting of $460 for September 1999 rent, $50 in costs, and $250 in attorney fees. The trial court issued an order and writ of restitution on September 3. That evening, the writ was served upon Ms. Newbigging. Ms. Newbigging attempted to pay her September rent on September 7. Counsel for Housing returned her money order and informed her that Housing would soon remove her from the premises. Pursuant to the writ, Housing evicted Ms. Newbigging from the premises on September 13.

The day after her eviction, Ms. Newbigging filed a CR

60(b) motion to vacate the default judgment. She retained counsel shortly thereafter. At a hearing on September 24, Ms. Newbigging, supported by affidavits, argued Housing's counsel told her she could cure the default by paying the July rent and that such payment was accepted. She also insisted her rental agreement had been amended to allow for later payment of rent. The trial court said resolution of the matter turned on the proper due date of rent and thus allowed Ms. Newbigging access to Housing's file to produce more evidence.

That access produced four documents. First was a July 19, 1996 agreement signed by both Housing and Ms. Newbigging allowing for payment of rent in equal parts on the 15th and 28th of each month. Second was an unsigned September 30, 1997 "permanent agreement" for payment of rent on the 15th and 27th. CP at 77. Third was a July 9, 1999 "permanent agreement," signed solely by Housing, setting the rent payment dates on the 15th and the 27th. CP at 76. Fourth was a July 19, 1999 letter rescinding the 15th and 27th payment agreement and setting the rental due date on the 5th of each month effective August 1999. Ms. Newbigging alleged that she did not receive the July 19 letter.

The trial court took additional argument on November 12, 1999. On December 31, 1999, the trial court granted the motion to vacate by memorandum opinion. The trial court partly stated:

> If, as Housing alleges, the rent due-date modification agreement was vacated by letter of July 19, then when Housing obtained the Judgment and Writ on September 3, July and August rent were fully paid, along with a late fee for July and $250 in attorney fees, and September rent was not due. If, as Ms. Newbigging contends, the rent due-date modification agreement was still in effect, the same conclusion pertains.

> Housing takes the position that the August 2 payment of July rent, late charges and attorney fees was a "partial payment," and that, as stated in the summons, further rent which became due during the pendency of the cause would have to be paid.

The flaw in this position is that, even under Housing's view, the August 2 payment could not have been a partial payment because August rent was not yet due.

The court's conclusion is that when Housing received all rent then owing on August 2, together with an agreed sum of attorney fees for commencing the action, the action was defeated. If August rent was thereafter not paid when due, Housing would be required to provide a new 3-day notice and commence a new action if payment was not made as directed in the notice. Furthermore, as of September 3, September rent, for which the judgment was taken, was not yet due. Both of these irregularities render the judgment voidable.

In addition, Ms. Newbigging's failure to appear or answer, under the circumstances of contacts with, and payments to, Counsel's office, constitutes excusable neglect and inadvertence in a classic form. This is especially so under a conclusion that, as a matter of law, the August 2 payment resolved all matters pending in this action.

CP at 108-09.

On February 8, 2000, Ms. Newbigging filed a motion for award of terms, claiming approximately $3,300 in attorney fees. The trial court decided Ms. Newbigging was entitled to terms, however, reasoning that because she bore some of the blame, it awarded her $1,650. The trial court then reduced the award to judgment. Housing appealed the decisions to vacate and award terms.

## ISSUES

■ The issues presented are whether the trial court erred by abusing its discretion when (A) vacating the default judgment against Ms. Newbigging, and (B) ordering Housing to pay terms. We note in response to Ms. Newbigging's RAP 10.7 motion to strike portions of Housing's brief pursuant to RAP 10.3 and 10.4, that it is apparent certain self-serving statements in Housing's brief are unsupported in the record. They will not be considered. See *State v. Falling*, 50 Wn. App. 47, 52 n.3, 747 P.2d 1119

(1987) (appellate court will disregard matters not made part of record).

## ANALYSIS

### A. Vacating the Default Judgment

■ ■ The trial court vacated the default judgment pursuant to CR 60(b). "Vacation of a judgment under CR 60(b) is within the trial court's discretion." *State v. Santos*, 104 Wn.2d 142, 145, 702 P.2d 1179 (1985). The reviewing court "will overturn the trial court only if it plainly appears that its discretion has been abused." *Id.* (citing *Haller v. Wallis*, 89 Wn.2d 539, 573 P.2d 1302 (1978)). A trial court abuses its discretion when it exercises it on untenable grounds or for manifestly unreasonable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). The abuse of discretion standard applies throughout this opinion.

■ From a policy standpoint, default judgments are not favored as they prevent controversies from being determined on the merits. *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 581, 599 P.2d 1289 (1979); *accord Norton v. Brown*, 99 Wn. App. 118, 123, 992 P.2d 1019, 3 P.3d 207 (1999), *review denied*, 142 Wn.2d 1004 (2000). "On the other hand, an orderly system of justice mandates that parties comply with a judicial summons." *Norton*, 99 Wn. App. at 123 (citing *Griggs*, 92 Wn.2d at 581). Equitable principles guide the court considering a motion to vacate. *Norton*, 99 Wn. App. at 123. As the *Griggs* court observed:

> "[T]he overriding reason should be whether or not justice is being done. Justice will not be done if hurried defaults are allowed any more than if continuing delays are permitted. . . . What is just and proper must be determined by the facts of each case, not by a hard and fast rule applicable to all situations regardless of the outcome."

*Griggs*, 92 Wn.2d at 582 (alteration in original) (quoting *Widucus v. S.W. Elec. Coop.*, 26 Ill. App. 2d 102, 109, 167 N.E.2d 799, 803 (1960)).

■ "When deciding a motion to vacate a default judgment, the court must consider two primary and two secondary factors that must be shown by the moving party." *Norton,* 99 Wn. App. at 123 (citing *White v. Holm*, 73 Wn.2d 348, 352, 438 P.2d 581 (1968)). The two primary factors are (1) "the existence of substantial evidence to support at least a prima facie defense" to the opposing party's claim; and (2) the "failure to timely appear was the result of mistake, inadvertence, surprise or excusable neglect." *Norton,* 99 Wn. App. at 123. The secondary factors are (3) the party seeking relief acted with diligence after receiving notice of the default judgment; and (4) the effect on the opposing party would not be prejudicial if the judgment were vacated. *Id.* at 123-24. "These factors are interdependent; thus, the requisite proof that needs to be shown on any one factor depends on the degree of proof made on each of the other factors." *Id.* at 124 (citing *White,* 73 Wn.2d at 352-53).

■ Regarding the first factor, Housing relies on *Housing Resource Group v. Price*, 92 Wn. App. 394, 958 P.2d 327 (1998), *review denied*, 137 Wn.2d 1010 (1999), for the general proposition that Ms. Newbigging's payment of the July rent did not act as a waiver. We are not persuaded.

In *Housing Resource Group*, the renter underpaid his rent for some six months. *Hous. Res. Group*, 92 Wn. App. at 397. During that time, Housing Resource Group (HRG) served the tenant with four three-day notices to pay rent or vacate. *Id.* Each notice stated the correct rent and the outstanding balance for previous months. *Id.* When the tenant finally tendered the correct amount of rent for one month, HRG rejected the payment and delivered two more three-day notices that month. *Id.* Finally, HRG brought an unlawful detainer to terminate the tenancy and recover the unpaid rent. *Id.*

The HRG tenant argued that "each time HRG accepted rent after issuing a three-day notice, it waived its right to evict him." *Id.* at 402. Division One of this court rejected that contention, stating:

The well established rule in Washington is that if a landlord accepts rent with knowledge of a prior breach of a lease covenant, the landlord waives the right to evict based on that breach. However a "landlord does not waive defaults in rent by accepting rent after a three-day notice if he applies the receipts to earliest rent first and there is still some rent owing for the period before the notice."

*Hous. Res. Group*, 92 Wn. App. at 401-02 (quoting 2 WASH. STATE BAR ASS'N, REAL PROPERTY DESKBOOK § 27.12(2)(e), at 27-123 (3d ed. 1996)) (footnotes omitted). Division One reasoned that because the tenant still owed back rent predating the three-day notices the payment of rent did not act as a waiver. *Id.* at 402.

Here, Housing sent Ms. Newbigging a single three-day notice to pay rent or vacate for failure to pay the July rent. It then served her with an eviction summons and unlawful detainer action based on that breach. Ms. Newbigging then paid the July rent plus a late charge and attorney fees on August 2. Housing's law firm accepted that payment. By Housing's own terms as set forth in its July 19, 1999 letter, her August rent was not due until August 5. Accordingly, the August 2 payment cured the breach that formed the basis of the eviction and unlawful detainer action. No back rent was owed at that time. Housing thus waived the July breach when it accepted the August 2 payment.

Ms. Newbigging also paid her August rent, albeit arguably in an untimely fashion. Indeed, she overpaid her August rent by $5. Despite her failure to pay her rent by August 5, 1999, Housing accepted payment without sending her another three-day notice to pay or vacate. Consequently, Housing waived any August breach.

Regarding the July and August payments, Housing correctly points out the defendant in an unlawful detainer is supposed to pay rent into the registry of the court. RCW 59.18.375(2). Ms. Newbigging paid the July rent to Housing's law firm and the August rent directly to Housing. Housing accepted those monies and thus waived its untimely objection to the means of payment.

■ At the time of the September 3, 1999 unlawful detainer hearing, Ms. Newbigging was current on her rent. According to the conditions set by Housing, her September rent was not due until September 5. Nonetheless, Housing obtained a default judgment on September 3 for non-payment of September's rent. Given this record, Ms. Newbigging had a compelling defense to the unlawful detainer action; she cured the breach forming the basis of the action.

■ ■ We turn to the second factor in the CR 60(b) analysis, the existence of mistake, inadvertence, surprise or excusable neglect. Housing contends the trial court relied on hearsay statements by Ms. Newbigging, which alleged that counsel for Housing told her and her father that payment of the July rent and the $250 in attorney fees would settle the matter. First, Housing's objection is untimely; according to the record, Housing did not object when Ms. Newbigging first made her allegation and did not bring up the hearsay matter until the presentment hearing. Nonetheless, the trial court stated that it did not consider the statements offered for the truth of the matter asserted.

Moreover, Housing has failed to support its hearsay with citation to legal authority. "We need not consider arguments for which a party has cited no authority." *Fischer-McReynolds v. Quasim*, 101 Wn. App. 801, 814, 6 P.3d 30 (2000) (citing *State v. Dennison*, 115 Wn.2d 609, 629, 801 P.2d 193 (1990)).

Ms. Newbigging's statement as to what Housing's counsel told her supports her assertion that she thought payment of the July rent settled the unlawful detainer matter. In this regard, the matter asserted is not that the August 2 payment actually settled the matter but rather that Ms. Newbigging, relying on communications from the firm representing Housing, *thought* the payment settled the matter. *See State v. Crowder*, 103 Wn. App. 20, 26, 11 P.3d 828 (2000) (applying "state of mind" exception to hearsay rule under ER 803(a)(3)).

■ Next is the confusion over the correct rental due

date. The rental agreement had been modified to allow payment on the 15th and 27th or 28th. The July 19, 1999 Housing letter purportedly rescinds the modified rent schedule and resets the due date to the 5th of each month effective in August, 1999. The uncontroverted allegation of Ms. Newbigging is that she never received the July 19 letter. If the correct payment date was the 15th and 27th or 28th, the notice to pay or vacate was premature. Moreover, Ms. Newbigging's August rent payments would have been timely. Worse, her September rent would not have been due as of the date she was evicted.

Further, counsel's letter of August 13, 1999 "allow[ed]" Ms. Newbigging to "get current" on her rent by September 3, 1999 and thus escape default judgment. CP at 38. She had already cured the July default and overpaid her August rent before counsel's deadline. Her September rent was not due at least until the 5th. As she was current on her rent, Ms. Newbigging mistakenly believed the matter was settled as counsel's misleading letter of August 13 suggested. Ms. Newbigging's statements in the record indicate she was operating under the understandably mistaken belief she had settled the matter. Thus, her failure to appear on September 3, 1999 was not willful; it was the product of excusable negligence, mistake, and inadvertence. *See Norton*, 99 Wn. App. at 124 (reasoning insurer miscommunication with defendant and defendant's confusion with regard to summons and complaint constituted mistake and excusable neglect).

Moreover, the judgment was based on several irregularities. Because Ms. Newbigging's entire July rent did not become due until the 27th or 28th, the July 20 three-day notice to pay all of July's rent or vacate may have been defective. *See Bernard v. Triangle Music Co.*, 1 Wn.2d 41, 53, 95 P.2d 43 (1939) (dismissing unlawful detainer action where notice to pay or quit issued before rent was due). The unlawful detainer was based on nonpayment of July's rent. That rent had long been paid by the time of entry of judgment. August's rent had been paid as well without

complaint from Housing. Most importantly, the default judgment was for September's rent and attorney fees even though the rent for that month was not yet due. *See Muscek v. Equitable Sav. & Loan Ass'n*, 25 Wn.2d 546, 553-54, 171 P.2d 856 (1946) (vacating monetary judgment entered before court had determined interlocutory matter); *see also State ex rel. Turner v. Briggs*, 94 Wn. App. 299, 302-05, 971 P.2d 581 (1999) (noting court can vacate void or voidable judgments under CR 60).

▇ Additionally, we doubt Ms. Newbigging was given proper notice before default judgment without the five-days notice required by CR 55(a)(3). Without notice, the trial court lacked authority to enter the default judgment. *Shreve v. Chamberlin*, 66 Wn. App. 728, 731, 832 P.2d 1355 (1992). A party who has not received proper notice is "entitled as a matter of right" to have any resulting default judgment vacated. *Id.*

▇ ▇ Here, Ms. Newbigging appeared informally when she tried to resolve the matter by having her father submit her July rent, late fee, and attorney fees directly to Housing's counsel. *See Skilcraft Fiberglass, Inc. v. Boeing Co.*, 72 Wn. App. 40, 45-46, 863 P.2d 573 (1993) (noting concept of appearance for purposes of CR 55 is broad and thus encompasses informal actions manifesting party's intent to contest matter). Housing's letters of August 3 and 13 purport to enclose notices of upcoming hearings but the record does not document whether they were actually sent to Ms. Newbigging. And the record does not reflect whether Housing sent Ms. Newbigging an affidavit supporting default judgment as set forth in CR 55(a).

Moreover, to obtain a writ of restitution, the complaining landlord must obtain an order for a show cause hearing, to be held between 6 and 12 days subsequent to its issuance, and then serve the order upon the tenant. RCW 59.18.370; 17 WILLIAM B. STOEBUCK, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW, § 6.80 (1995); *see also Hartson P'ship v. Goodwin*, 99 Wn. App. 227, 230, 991 P.2d 1211 (2000) (noting that show cause hearing on issuance of writ of

restitution required). Here, the record does not reflect whether the trial court issued a show cause order or that such order was served upon Ms. Newbigging. Even if we assumed that counsel's August 13 letter constituted notice, the default hearing was held well beyond the time allowed in RCW 59.18.370.

Regarding the third CR 60(b) factor—diligence, Ms. Newbigging filed her CR 60(b) motion 11 days after entry of the default judgment, just one day after her eviction. CR 60(b) permits filing "within a reasonable time" or "not more than 1 year after" the judgment when the movant relies on CR 60(b)(1). Ms. Newbigging was not so lacking in diligence as to defeat her CR 60(b) motion. *Cf. Norton*, 99 Wn. App. at 126 (noting with approval that defaulting party "moved immediately to vacate the default judgment once he learned of its existence").

Finally, regarding the fourth factor—prejudice to the opposing party, we note that Housing brought this unlawful detainer action for nonpayment of rent. Yet, Ms. Newbigging had paid all rent owed to Housing at the time of the default proceeding. Housing rejected tender of September's rent even though it may have been timely under the rent payment modification agreement. Thus, vacating the default judgment would not prejudice Housing.

Given the above, we conclude the trial court had tenable grounds for vacating the default judgment and did not err. This is not a case where the tenant failed completely to respond to the landlord's demands. Ms. Newbigging brought her rent up to date, yet Housing proceeded with the default judgment on the erroneous belief she had not. To allow the default judgment to stand under these circumstances would have been inequitable.

## B. Terms and Attorney Fees

Although Housing argues the trial court did not state a basis for awarding terms, it stated terms were awarded pursuant to CR 60. Housing further argues Ms. Newbigging

improperly relied on RCW 59.18.290, but her legal memorandum and argument below plus her appellate brief relies solely on CR 60(b) and related authorities and before obtaining counsel, Ms. Newbigging did ask for relief under CR 11.

CR 60(b) partly states: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding[.]" "If there is sufficient justification, a trial court may impose sanctions pursuant to the above-quoted language." *Pamelin Indus., Inc. v. Sheen-U.S.A., Inc.*, 95 Wn.2d 398, 403, 622 P.2d 1270 (1981). "The decision to impose terms as a condition on an order setting aside a judgment lies within the discretion of the court." *Knapp v. S.L. Savidge, Inc.*, 32 Wn. App. 754, 756, 649 P.2d 175 (1982) (citing *Pamelin*, 95 Wn.2d at 403; *Hendrix v. Hendrix*, 101 Wash. 535, 172 P. 819 (1918)). *Pamelin* and *Knapp* imposed terms on parties seeking to vacate default judgments.

Here, the trial court imposed terms on the party *opposing* the motion to vacate. Although Ms. Newbigging does not cite to any case where terms were imposed on the opposing party, she argues the trial court has equal discretion under CR 60(b) to award her terms under the circumstances presented here. We agree.

While no case law is directly on point, our analysis of CR 60(b) and the applicable case law lead us to believe that a trial court may award terms to either a moving or opposing party when considering a motion to set aside a default judgment. The rule is equitable in nature and gives the trial court liberal discretion to " 'preserve substantial rights and do justice between the parties.' " *Pamelin*, 95 Wn.2d at 404 (quoting *Haller v. Wallis*, 89 Wn.2d 539, 543, 573 P.2d 1302 (1978)). Consequently, we can envision equitable circumstances that may support granting terms to the moving party such as fraud, misrepresentation, or other misconduct of the opposing party.

Here, Ms. Newbigging spent approximately $3,300

in successfully vacating a default judgment that Housing obtained under highly questionable circumstances. At the same time, Ms. Newbigging bore some responsibility for her predicament. Given the equities, we cannot say the trial court abused its discretion in awarding Ms. Newbigging $1,650 in terms. *Pamelin*, 95 Wn.2d at 401.

 Whether Ms. Newbigging is entitled to attorney fees below under the lease or statute is an issue we cannot decide at this point because the trial court has not issued judgment on the merits of the unlawful detainer action. *See Hous. Auth. v. Terry*, 114 Wn.2d 558, 571, 789 P.2d 745 (1990) (declining to award attorney fees to tenant who did not prevail on the merits). And we decline to issue an opinion that would be purely advisory on the fee issue. Accordingly, we leave the parties to decide whether to submit these issues to the trial court in connection with any remaining issues on the merits.

 Ms. Newbigging also requests attorney fees for defending a frivolous appeal. Although Housing did not prevail, its contentions are not so devoid of merit as to render its appeal frivolous; therefore, Ms. Newbigging's request is denied. *Goad v. Hambridge*, 85 Wn. App. 98, 105-06, 931 P.2d 200 (1997).

## CONCLUSION

We hold the trial court did not err when vacating the default judgment or in awarding terms to Ms. Newbigging.

Affirmed.

SWEENEY and KATO, JJ., concur.