# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ANUP KHELA, | ) | No. 69124-4-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| KALEN PETERS; QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, INC.; 10 ASSET MANAGEMENT HOLDINGS, LLC; and DOES 1 through 20, | ) | |
| Defendants, | ) | |
| ASSET MANAGEMENT HOLDINGS, LLC., | ) | |
| Appellant. | ) | FILED: December 14, 2015 |

APPELWICK, J. — The trial court denied AMH's motion to vacate a default judgment. AMH argues that it did not receive proper notice of Khela's motion for default. It contends that the trial court erroneously decided that AMH's failure to respond to the complaint was due to inexcusable neglect. We affirm.

## FACTS

Anup Khela owned a condominium in Issaquah. Her first loan on the property was owned or serviced by Wells Fargo Bank. In 1998, Khela obtained a second loan from Land Home Financial Services. Each loan was secured by a

deed of trust. Land Home assigned the deed of trust to FirstPlus Financial Inc. FirstPlus then assigned its interest to 10 Asset Management Holdings LLC (10 AMH). 10 AMH's interest in the deed of trust was serviced by a separate corporation, Asset Management Holdings LLC (AMH). AMH was responsible for collecting payments and initiating foreclosure proceedings.

In 2005, Khela became seriously ill and unable to work for long periods of time. She filed for bankruptcy that year, and the bankruptcy was pending for three years. Then, in 2008, her case was dismissed. At that time, Khela was delinquent in her loan payments to Wells Fargo. Wells Fargo began foreclosure proceedings against her. As servicer of the junior loan, AMH then initiated foreclosure proceedings to protect against losing its interest in the property. The second deed of trust permitted AMH to do so,[1] even though Khela was not otherwise in default on the second loan. 10 AMH appointed Quality Loan Service Corporation (QLS) as trustee under the deed of trust. QLS, as trustee, arranged for Khela's condominium to be sold.

Not wanting to lose her home, Khela negotiated with Wells Fargo for a loan modification. She communicated with AMH about the effect this loan modification would have on AMH's foreclosure proceedings. An AMH employee, Lynn Vadnais, informed Khela that she must record a loan modification agreement with Wells Fargo before her loan with AMH could be reinstated. Khela's loan modification

---

[1] The deed of trust contains a provision that states, "[I]f any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest."

2

was approved in August 2008. But, the agreement was not recorded until November 19, 2008.

Even though the agreement was not yet recorded, Khela contacted both AMH and QLS to notify them of the agreement and attempt to cure the default.[2] She claims that in early October 2008 a QLS employee told her that the sale had been cancelled. That was confirmed when Khela called the automated information line provided by QLS, where a recorded message told her that the sale had been cancelled.

But, the sale had not been cancelled. Kalen Peters purchased title to the condominium at the foreclosure sale on October 17, 2008. The trustee's deed upon sale was recorded on November 3, 2008. Khela claims she first learned of the sale when Peters served her with notice of the purchase on October 20, 2008. Peters initiated an eviction action against Khela to remove her from the condominium.

On November 19, 2008, Khela filed a summons and complaint against AMH, 10 AMH, QLS, Peters, and twenty unnamed defendants. She alleged fraud and fraud in the inducement, infliction of emotional distress, slander, unconscionability, violations of the Consumer Protection Act, chapter 19.86 RCW, breach of fiduciary duty, quiet title, and reformation of contract. Khela served the

---

[2] Khela asserts that she sent AMH a copy of the verification letter notifying her that the loan modification had been approved. This letter is not included in the record. Her conversations with AMH and QLS regarding the loan modification agreement took place primarily over the telephone.

summons and complaint on an employee of AMH's registered agent on December 3, 2008.

On January 2, 2009, AMH and 10 AMH filed a notice of appearance. Both companies were represented by Matthew Cleverley and Lucy Gilbert of McCarthy & Holthus LLP. Cleverley and Gilbert already represented QLS in this case.

Several months later, on September 24, 2009, Cleverley and Joni Derifield, also of McCarthy & Holthus,[3] sent a notice of intent to withdraw to AMH, 10 AMH, and counsel for Khela and Peters. The notice of intent to withdraw listed both AMH and 10 AMH's last known address as 1000 Tamiami Trail North, 2nd Floor, Sarasota, FL 34275. While the notice contained the correct caption, the notice of intent to withdraw had the wrong cause number.[4] It also was never filed with the court.

One year later, AMH and 10 AMH still had not responded to Khela's complaint. Khela moved for an entry of default against AMH and 10 AMH on September 13, 2010. Her first motion was denied, because Khela did not support it with a declaration. Her second motion was also denied, because AMH and 10 AMH had appeared in the action and were entitled to notice of default. Khela moved for an entry of default a third time on November 1, 2010. She mailed copies of the motion and supporting documents to AMH and 10 AMH at 1000 Tamiami

---

[3] Gilbert was not included in the notice of withdrawal, although she had appeared. And, both Cleverely and Derifield left McCarthy & Holthus sometime after sending their notice of intent to withdraw.

[4] The cause number included on the notice of intent to withdraw was for a related case—Peters's unlawful detainer action against Khela. AMH, 10 AMH, and QLS were not involved in that action.

4

Trail North, 2nd Floor, Sarasota, FL 34275.[5] Khela also served Albert Lin of McCarthy & Holthus and Peters's attorney.

On November 15, 2010, the trial court found AMH and 10 AMH in default. It entered a default judgment for Khela in the amount of $111,953.35.

On May 15, 2012, AMH moved to set aside the entry of default and vacate the default judgment pursuant to CR 55(c)(1) and CR 60(b). It asserted that the trial court should vacate the entry of default because it did not receive notice of the default proceedings. And, it argued that it had a strong defense to Khela's claims.

The hearing took place on June 22, 2012. The court made oral findings on each of the four relevant factors. It concluded that there was substantial evidence showing AMH had a prima facie defense to Khela's claims because it had a contractual right to foreclose. The court determined that AMH's failure to respond was not due to mistake, inadvertent surprise, or excusable neglect, because AMH should have taken action when told its attorneys were withdrawing. The court further found that AMH did not act with due diligence, because it did not check the record in the case at any time. Finally, the court considered the substantial hardship to Khela, which would be additional attorney fees and a possible verdict in favor of AMH. After this analysis, the court concluded that the equities favored Khela and denied AMH's motion to vacate the default judgment. AMH appeals.

---

[5] In addition to serving the LLCs, Khela served corporations with similar names (Asset Management Holdings Inc. and 10 Asset Management Holdings Inc.) at 7820 Holiday Drive South, Sarasota, FL 34231-5346. Khela obtained this address from an internet search.

DISCUSSION

AMH presents two arguments. First, it claims that Khela did not provide it with notice of the default judgment proceedings, in violation of CR 55(a)(3). As such, AMH contends it was entitled to have the default vacated as a matter of law. Alternatively, AMH asserts that the trial court abused its discretion in applying the test to vacate a default judgment under CR 60(b)(1).

I.    Service under CR 55(a)(3)

AMH argued below that it did not receive notice of Khela's motion for default. AMH contends that the trial court erred by not considering this argument. AMH asserts that it appeared in the action, and was therefore entitled to notice before a default judgment was entered against it.

CR 55 governs entry of default and entry of default judgment. In particular, CR 55(a)(3) provides, in relevant part, "Any party who has appeared in the action for any purpose shall be served with a written notice of motion for default and the supporting affidavit at least 5 days before the hearing on the motion." If a party is entitled to notice and does not receive it, the party is entitled as a matter of right to have the default judgment vacated. Housing Auth. of Grant County v. Newbigging, 105 Wn. App. 178, 190, 19 P.3d 1081 (2001).

Once a party has filed a notice of appearance, the party has appeared in the case. See RCW 4.28.210; Tiffin v. Hendricks, 44 Wn.2d 837, 843-44, 271 P.2d 683 (1954). From that point on, service must be made on the party's attorney unless the court orders service on the party. CR 5(a). Service can be effectuated by delivering copies to the party's attorney or the party or by mailing them to the

party's or the party's attorney's last known address. CR 5(b)(1). However, once the attorney has withdrawn in compliance with CR 71, service on that attorney is no longer proper. CR 5(b)(1); CR 71(a). To withdraw from the case, the attorney must "file and serve a Notice of Intent to Withdraw" on the other parties and on the client. CR 71(c).

Here, AMH's attorneys filed a notice of appearance in the case. Therefore, AMH had appeared in the case and was entitled to notice of the motion for default. CR 55(a)(3). The only question is whether AMH received proper notice under CR 55(a)(3).

AMH contends that its attorneys failed to properly withdraw from the case. It asserts that counsel failed to file notice of withdrawal, making withdrawal ineffective. AMH argues that its attorneys failed to inform AMH of Khela's motion for default judgment, thereby depriving AMH of notice. But, in making this argument, AMH concedes that counsel of record received notice of Khela's motion for default judgment. Service on the attorney of record is sufficient under CR 55(a)(3)(a). CR 5(b)(1). AMH has cited to no authority suggesting that actual notice to the party is required. Therefore, since counsel of record was served, AMH received proper notice of the motion for default.

Alternatively, AMH argues that Khela was required to serve AMH, not its attorneys, because of its belief that it was unrepresented. However, if this is the case, then AMH still did not take appropriate action. A corporation is an artificial entity whose interests must be represented by counsel. Cottringer v. Emp't Sec. Dep't, 162 Wn. App. 782, 787, 257 P.3d 667 (2011). If AMH was unrepresented

7

by counsel, it could not participate in the litigation. See id. So, AMH had at least the obligation to retain new counsel so that it could appear in the case. See id. Yet, AMH did not retain new counsel. Additionally, by the time AMH received the notice of intent to withdraw from its attorneys, it had already changed addresses. But, the notice of withdrawal indicated that AMH's last known address was its former address. Without retaining a new attorney to represent its interests or without filing its new address with the court, AMH should have known that it would not receive information about the case. It had the responsibility to update its address with the court to ensure it would be informed about the proceedings. Yet, AMH did not do so. Khela relied on the last known address contained in the court record in serving her motion for default. This reliance was reasonable. Cf. Martin v. Meier, 111 Wn.2d 471, 477-78, 760 P.2d 925 (1988) (in the context of RCW 46.64.040, service mailed to the defendant's last known address is sufficient).

Under either theory, Khela served AMH as required by CR 55(a)(3). She served AMH's counsel of record and AMH at its last known address. We hold that the trial court did not err in rejecting AMH's argument that it was not served with the motion for default.

II.     Trial Court's Refusal to Vacate the Default Judgment

AMH also argues that the trial court abused its discretion by refusing to vacate the default judgment in favor of Khela. Specifically, it asserts that the trial court improperly applied the test for vacating a default judgment under CR 60(b).

Default judgments are not favored in Washington. Griggs v. Averbeck Realty, Inc., 92 Wn.2d 576, 581, 599 P.2d 1289 (1979). However, a court must

balance the preference that controversies are determined on their merits with the need for a responsive legal system. Johnson v. Cash Store, 116 Wn. App. 833, 840-41, 68 P.3d 1099 (2003). In deciding to vacate a default judgment, a trial court applies equitable principles. Norton v. Brown, 99 Wn. App. 118, 123, 992 P.2d 1019, 3 P.3d 207 (1999). In doing so, the overriding consideration is, based on the specific facts, whether justice is being done. Id.

This court reviews a trial court's ruling under CR 60(b) for abuse of discretion. Gutz v. Johnson, 128 Wn. App. 901, 916, 117 P.3d 390 (2005), affirmed by Morin v. Burris, 160 Wn.2d 745, 161 P.2d 956 (2007). Generally, it is more likely that a court will reverse a trial court decision refusing to vacate a default judgment. Id.

AMH contends that the trial court erred in its application of the CR 60(b)(1) factors. CR 60(b)(1) permits a court to vacate a default judgment that was obtained due to mistake, inadvertence, surprise, excusable neglect, or irregularity. A trial court considers four factors when deciding to set aside a default judgment under CR 60(b)(1). White v. Holm, 73 Wn.2d 348, 352, 438 P.2d 581 (1968). The factors are:

> (1) That there is substantial evidence extant to support, at least prima facie, a defense to the claim asserted by the opposing party; (2) that the moving party's failure to timely appear in the action, and answer the opponent's claim, was occasioned by mistake, inadvertence, surprise or excusable neglect; (3) that the moving party acted with due diligence after notice of entry of the default judgment; and (4) that no substantial hardship will result to the opposing party.

Id. Factors one and two are primary, while factors three and four are secondary. Id. And, the factors are interdependent. Norton, 99 Wn. App. at 124. The strength of the showing on each factor affects the showing needed on the other factors. Id.

A. Prima Facie Defense

AMH contends that it has a strong defense to Khela's claims, so the trial court should have given this factor greater weight. A party moving to vacate a default judgment must show substantial evidence supporting at least a prima facie defense. White, 73 Wn.2d at 352. The trial court examines the evidence of the defense in the light most favorable to the moving party. Ha v. Signal Elec., Inc., 182 Wn. App. 436, 449, 332 P.3d 991 (2014), review denied, 182 Wn.2d 1006, 342 P.3d 327 (2015). However, to determine that the moving party's defense is strong or virtually conclusive, the court must examine all the evidence, not merely that which if believed would support the defense. TMT Bear Creek Shopping Ctr., Inc. v. PETCO Animal Supplies, Inc., 140 Wn. App. 191, 202-03, 207, 165 P.3d 1271 (2007).

AMH's defense focused on the terms of the deed of trust. AMH points to the clause providing that as servicer of AMH's deed of trust, AMH may take "'such action as is necessary to protect Lender's interest' in the Plaintiff's property in the event that 'any action or proceeding is commenced which materially affects Lender's interest' in the Plaintiff's property." AMH contends this provision authorized it to commence foreclosure proceedings when Khela defaulted on her loan with Wells Fargo, so as to protect its interest.

10

Viewed in the light most favorable to AMH, this evidence supports a prima facie defense to Khela's claims. AMH had a contractual right to initiate foreclosure proceedings at the time Wells Fargo initiated foreclosure proceedings. However, it is unclear whether AMH was authorized to continue these proceedings once Khela and Wells Fargo reached a loan modification agreement. AMH's defense, then, cannot be deemed virtually conclusive. We assess the other White factors accordingly.

B. Excusable Neglect

AMH contends that the trial court erred in determining that it did not show excusable neglect. It asserts that the trial court improperly blamed it for the negligence of its attorneys in failing to file the notice of withdrawal.

The trial court found that some of the mistakes involved here were due to AMH's attorneys at McCarthy & Holthus. But, the trial court also recognized that AMH's actions were "bizarre." AMH conceded before the trial court that it received the original pleadings in this case. And, AMH admitted that it received the notice of withdrawal from its attorneys notwithstanding the fact that the notice was sent to its old, incorrect address. It admitted that this notice included the correct caption, although the cause number was incorrect.

As the trial court recognized, AMH did nothing after receiving its attorneys' notice of intent to withdraw. The record does not show that AMH called, wrote, or e-mailed its attorneys at McCarthy & Holthus. It does not show that AMH took steps to clarify the confusion of the cause number. And, AMH did not object to the withdrawal. It did not retain a new attorney to represent it. Additionally, the notice

11

of withdrawal demonstrated that AMH's attorneys did not know that AMH had moved. And, even so, AMH did not notify anyone at McCarthy & Holthus of its new address. Nor did it update its address with the court.

Even without considering the negligence of McCarthy & Holthus, AMH's actions do not constitute excusable neglect. This factor weighs against relief.

### C. Due Diligence

AMH alleges that the trial court erred in holding that AMH did not act with due diligence. The trial court found that AMH did not meet this factor, because the default judgment was of record for over a year before AMH contested it. The court concluded that with the default judgment in the record for so long, AMH had at least de facto notice of the default judgment.

AMH argues that the trial court ignored the fact that it did not have actual notice of the default judgment until Khela attempted to enforce the judgment on February 14, 2012. It claims that, as soon as it learned of the default judgment, it sought new counsel to challenge the default judgment.

On this factor, the trial court must assess whether the moving party acted with due diligence after receiving notice of the default judgment. White, 73 Wn.2d at 352. The court looks at the time between when the moving party learned of the default judgment and when it filed a motion to vacate. Ha, 182 Wn. App. at 454. Here, AMH took action as soon as Khela attempted to enforce the judgment. It retained new counsel, who immediately began preparing to move to vacate the judgment. Taking AMH's assertion that it did not have notice of the judgment until Khela attempted to enforce it as true, then AMH satisfied the due diligence factor.

12

D. Substantial Hardship

AMH further contends that the trial court erred in finding that vacating the default judgment would cause substantial hardship to Khela. The court below reasoned that a substantial judgment had already been entered in Khela's favor, and if that judgment were set aside, Khela would likely incur more attorney fees. She may even receive a verdict against her.

Courts do not typically find substantial hardship on the plaintiff when the only hardship is the prospect of trial. See Pfaff v. State Farm Mut. Auto. Ins. Co., 103 Wn. App. 829, 836, 14 P.3d 837 (2000) ("If the law were otherwise, a judgment would never be set aside, for that always generates the prospect of trial."); Johnson, 116 Wn. App. at 842 (noting that drawing out a painful experience by having a trial on the merits was not a substantial hardship on the plaintiff).

Khela has not articulated any actual hardship that would result to her if the judgment were vacated. And, the trial court did not consider any hardship to her other than that involved in litigating the case on the merits and potentially losing. We conclude that these facts do not constitute a substantial hardship on Khela.

Though we disagree with the trial court's evaluation of the secondary factors, we do not disagree with its evaluation of the primary factors. Properly considering all of the factors, we cannot say that denial of the motion to vacate was an abuse of discretion.

Moreover, if the trial court committed an error, it was in evaluating the four factors at all. Relief under CR 60(b)(1) must be requested no more than one year after the judgment was entered. CR 60(b); Lindgren v. Lindgren, 58 Wn. App. 588,

13

596, 794 P.2d 526 (1990) (noting that the CR 60(b)(1) grounds to vacate a default judgment do not apply when the party brings the motion more than one year after the judgment was entered). Judgment was entered November 1, 2010. The motion to vacate was filed May 15, 2012. More than a year passed from entry of the judgment to any action on the part of AMH. Relief under CR 60(b) is barred.[6] We hold that the trial court did not abuse its discretion in denying AMH's motion to vacate the default judgment.

We affirm.

WE CONCUR:

---

[6] Parties cannot manipulate this time bar by construing a motion as a CR 60(b)(11) motion for any other reason justifying relief. Friebe v. Supancheck, 98 Wn. App. 260, 267, 992 P.2d 1014 (1999). Nor is it an excuse that the opposing party waited more than a year to execute the judgment. Id.