# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MICHAEL BUICH, | No. 78931-7-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| TADICH GRILL DEVELOPMENT COMPANY, LLC, a Washington limited liability company, | |
| Respondent. | FILED: January 6, 2020 |

APPELWICK, C.J. — The trial court vacated a default judgment obtained by Buich against TGDC and awarded attorney fees to TGDC. Buich argues the trial court abused its discretion. We affirm.

## FACTS

Michael Buich is the owner of Tadich Grill Inc. (TGI), which owns and operates the Tadich Grill, a restaurant in San Francisco. The Buich family has owned Tadich Grill since the late 1920s. Gerard Centioli is the president and chief executive officer of ICON Inc. and the president of ICONcepts LLC, the majority stakeholder of Tadich Grill Development Company LLC (TGDC). TGDC was formed in 2009 by ICONcepts and Buich to market TGI in additional cities.

Since TGDC's founding, the company opened only one new restaurant. That restaurant opened in Washington, D.C., in 2015. It filed for bankruptcy in January 2018. The restaurant's failure was due in part to negative publicity from

a Washington Post article concerning unseemly allegations regarding the Buich family. The parties disagreed on how to respond to the article, and their relationship has since deteriorated considerably. Between May 14 and 24, 2018, Buich filed two lawsuits and a cross complaint against TGDC in three different forums. Those forums included a California state court, the United States District Court for the Northern District of California, and this action in Washington state court. Buich and TGI are represented in the California actions by William Frimel. Buich is represented in the Seattle action by Jeffery Bilanko.

On March 18, 2018, Buich sent a letter to Centioli through his Seattle attorney, Bilanko, indicating his desire to dissolve TGDC. Centioli responded that he had retained counsel in connection with the matter and would forward the correspondence for their review. Buich filed the dissolution action in King County Superior Court on May 24. Centioli was personally served in that action on the same day.

On June 1, Buich scheduled a hearing for a motion for summary judgment in the dissolution matter. Buich attempted to personally serve Centioli notice of the motion the same day, but was unsuccessful.

Centioli is represented by Perkins Coie LLP. Davis Wright Tremaine LLP (DWT) was retained to represent TGDC after Perkins Coie determined it should not also represent TGDC. DWT obtained and reviewed papers associated with the three actions on June 8, 2018 and commenced work for TGDC the same day. Due to an apparent oversight in the transition of TGDC's defense to DWT, DWT

2

never received proof of service associated with the May 24, 2018 service of Centioli in the Washington dissolution action.

Later on June 8, John Freed, an attorney at DWT, left a voice mail for Buich's California attorney, William Frimel, representing that he had been retained to defend TGDC in the California cases. Freed then sent an e-mail to Frimel again indicating that DWT had been retained to defend TGDC. In his e-mail, Freed indicated that he was unsure whether TGDC had been served. Freed also copied Will Rava, an attorney at Perkins Coie, who was representing the remaining defendants in the California actions. Subsequent to this e-mail, Freed, Frimel, and Rava had a phone conference. During the conference, Buich's California attorney, Frimel, represented that Centioli was avoiding service. Frimel now claims that it was clear that he was referring to service of process when referring to the California cases, and to service of notice of the summary judgment hearing when referring to the Washington case. TGDC's attorney now claims that the conversation was in regards to service generally, and that he was led to believe that TGDC had not been served in the Washington dissolution action at all. In an e-mail later that day, Buich's California attorneys wrote: "Please confirm that Davis Wright Tremaine will accept service on behalf of TGDC of the latest papers counsel in the dissolution action is trying to serve. I have attached acceptance of service forms [for the California cases] . . . and will ask dissolution counsel to forward the same for the dissolution matter." DWT did not respond to this e-mail.

On June 19, Buich's Washington attorney filed a motion for default without notice to TGDC. He included a declaration that TGDC had not answered the

3

complaint or otherwise appeared in the action. Buich's motion did not disclose any of the prior communications between Buich's California attorney and DWT. The court granted the motion the next day. Buich's Washington attorney then moved for an entry of default judgment on June 22. The motion was denied because it did not include evidence regarding any matter set forth in the motion, including service.

At 5:20 p.m. on June 25, TGDC's attorneys e-mailed Buich's Washington attorney to inquire about whether TDGC had been served in the dissolution action. Also on June 25, Buich's Washington attorney claimed he filed another motion for entry of default judgment. He admits that this motion was filed after the 5:20 p.m. e-mail from TGDC, but assert he had not known of the TGDC e-mail at that time. Court records indicate that the motion was filed on June 26 at 9:00 a.m. The motion asserted that TGDC "failed to file its answer, a notice of appearance, or provide a defense in this matter." The motion and supporting declaration contain no reference to the previous California communications, or the e-mail that Buich's attorney had received the previous day. The court granted the motion at 9:10 a.m. on June 26.

At 4:30 p.m. on June 26, Buich's attorney responded to TGDC's service inquiry with the summons, complaint, and declaration of service of the complaint, and said that default judgment had been entered. TGDC's attorney responded by requesting that Buich stipulate to vacate the default judgment. Buich's attorney responded by asking for a detailed explanation of TGDC's basis to defend the

4

dissolution action on the merits. TGDC's attorney provided a written summary of their defenses at 9:27 p.m. on July 2.

On July 3, without responding to TGDC's request for stipulation, Buich's attorney filed dissolution papers for TGDC with the Washington Secretary of State based on the default judgment. Later that day, Buich's California attorney filed a motion in the federal action claiming TGDC had been dissolved.

On July 9, TGDC's attorney sent a letter to Buich's Washington attorney, again requesting that he stipulate to vacate the judgment. He indicated that if Buich refused, he would pursue a motion to that effect and make a complaint to the Washington State Bar Association for professional misconduct. Buich's attorney responded that he would not stipulate to vacating the judgment.

On July 24, TGDC moved to vacate the default judgment. The trial court found that TGDC had made an informal appearance, rendering the default judgment void for lack of notice. The trial court also found the judgment could be set aside due to misrepresentation and misconduct by Buich's attorneys, or due to excusable neglect by DWT. The court granted the motion to vacate, ordered Buich to revoke the dissolution of TGDC, and awarded TGDC $49,466 in attorney fees.

Buich appeals.

## DISCUSSION

The appellant makes four arguments. First, he contends that TGDC made no informal appearance in the case, and therefore was not entitled to notice of the motion for default under CR 55(a)(3). Second, he contends that TGDC is not entitled to relief from default under CR 60(b)(1), because TGDC's failure to appear

was not due to excusable neglect and it has not established a prima facie defense to dissolution. Third, he contends that there was no fraud, misrepresentation, or misconduct by his attorney that would justify vacating the default judgment under CR 60(b)(4). Last, he contends that the trial court erred in awarding TGDC attorney fees. In the alternative, he contends that DWT's hours expended and hourly rates were unreasonable.

The trial court's findings of fact are viewed for substantial evidence. Blackburn v. Dep't of Soc. & Health Servs., 186 Wn.2d 250, 256, 375 P.3d. 1076 (2016). Substantial evidence is evidence sufficient to persuade a rational, fair-minded person of the truth of the finding. Id. This court reviews questions of whether an appearance has been established as a matter of law de novo when the facts are not in dispute. Meade v. Nelson, 174 Wn. App. 740, 750, 300 P.3d 828, 833 (2013). This court otherwise reviews a trial court's decision to set aside a default judgment for abuse of discretion. Trinity Universal Ins. Co. of Kan. V. Ohio Cas. Ins. Co., 176 Wn. App. 185, 195, 312 P.3d 976 (2013). Vacation of default judgment is equitable in nature, and the trial court has discretion to do justice between the parties. See Hous. Auth. of Grant County v. Newbigging, 105 Wn. App. 178, 185, 192, 19 P.3d 1081 (2001). Therefore, this court should review a trial court's decision to award attorney fees for motion to vacate an order for default judgment for abuse of discretion. Id. ("'The decision to impose terms as a condition on an order setting aside a judgment lies within the discretion of the court.'" (quoting Knapp v. SL. Savidge, Inc., 32 Wn. App. 754, 756, 649 P.2d 175 (1982)). This court also reviews whether the amount of attorney fees is reasonable under

an abuse of discretion standard. <u>Taliesen Corp. v. Razore Land Co.</u>, 135 Wn. App. 106, 141, 144 P.3d 1185 (2006).

## I. Vacation of Default Judgment

### A. CR 60(b)(5): Void for Lack of Notice

The trial court found that TGDC had made an informal appearance in the matter based on the e-mail and telephonic communications that occurred before the entry of default judgment. Based on this finding, TGDC was entitled to notice before a default could be taken. Since notice had not been given, the trial court concluded under CR 60(b)(5) that the default and default judgment were void for lack of notice. The facts are not in dispute, only the import of those facts.

Under CR 55(a)(3), a party is entitled to notice of a motion for default if they have appeared for any purpose. The appearance requirement may be satisfied informally through the doctrine of substantial compliance. <u>Morin v. Burris</u>, 160 Wn.2d 745, 749, 161 P.3d 956 (2007). To determine if a party has substantially complied, the court examines the defendant's relevant conduct after litigation has commenced to determine if it was designed to, and, in fact, did apprise the plaintiff of the defendant's intent to litigate the case. <u>Id.</u> at 755. Mere intent to defend, whether shown before or after a case is filed, is not enough. <u>Id.</u> at 756. "[T]he defendant must go beyond merely acknowledging that a <u>dispute</u> exists and instead acknowledge that a dispute exists <u>in court</u>." <u>Id.</u>

### 1. No Informal Appearance June 8

Here, TGDC is involved in three separate lawsuits: an action in federal district court in the District of Northern California, a California state action and this

7

Washington dissolution action. DWT was retained to represent TGDC after Perkins Coie determined it should not also represent TGDC in these actions, presumably because they represented Centioli personally. DWT had received a copy of the Washington pleadings, but had not received proof of service.

DWT's only contact after the Washington litigation had commenced and before the motion for default was on June 8. The initial e-mail to William Frimel stated:

> Hi Bill,
> I'm writing to follow up on the voicemail [sic] I just left you regarding the Tadich Grill action in the Northern District. Davis Wright Tremaine was retained yesterday to represent Tadich Grill Development Company, LLC. We are not sure whether Plaintiff has served TGDC, but we understand it served other Defendants at various times in recent days. Regardless, we could use a bit of time to get up to speed on this complex matter, and would appreciate it if you would grant us a short extension of time to respond to the Complaint. To the extent you haven't served TGDC, we would be happy to accept service to move things along.
>
> I've copied Will Rava from Perkins Coie, who is representing the remaining Defendants. We propose agreeing to a uniform deadline next month for all Defendants to respond to the Complaint. Is this concept acceptable to Plaintiff? If so, we propose a collective July 13 deadline. Please let us know. If you are agreeable, I'll prepare and circulate a stipulation to all parties early next week.
>
> Looking forward to working with you.
>
> Thank you.
>
> Jake Freed

This e-mail was followed by the telephone conference between DWT attorney Jake Freed, Buich's California attorney William Frimel, and Will Rava,

8

from Perkins Coie. The declarations of counsel describe the content of that call.

According to Jake Freed:

> On June 8, 2018, I called William Frimel, counsel for Plaintiff Tadich Grill, Inc. ("Tadich") to ask whether Tadich had served TGDC in a related action in the Northern District of California ("Federal Action"), and to obtain an extension of time for TGDC to respond to the Federal Action complaint. After assuring me that he had served TGDC, without explaining how he did so, Mr. Frimel refused to grant the routine professional courtesy of an extension unless DWT, which does not represent Gerard Centioli, could find someone to accept service of the Complaint on Mr. Centioli's behalf. Mr. Frimel accused Mr. Centioli of "avoiding service" through acts such as "hiding at his girlfriend's," although Mr. Frimel provided no factual support for these accusations. Contrary to Mr. Frimel's representations regarding Mr. Centioli's supposed avoidance of service, attorneys representing Tadich's principal (and Mr. Frimel's other client) Michael Buich, had, on May 24, 2018, personally served Mr. Centioli with the complaint in this parallel dissolution action against TGDC in King County. On information and belief, Mr. Frimel was aware of this May 24 personal service on Mr. Centioli, such that his representations about Mr. Centioli avoiding personal service were incomplete and materially misleading.

According to William Frimel:

> Subsequently on June 8, 2018, Mr. Freed, Mr. Rava, and I had a phone conversation, during which, I informed Mr. Freed that Gerard Centioli appeared to be avoiding service of the complaints in both California actions. I also informed Mr. Freed that Mr. Centioli appeared to be avoiding service of the notice of summary judgment hearing date in the Washington dissolution action. I specifically stated that the dissolution action was pending. I never told or implied to Mr. Freed that TGDC had not been served with the compliant in the Washington dissolution action. At no point during this phone conference did Mr. Freed ever request any information about the Washington Dissolution Action. Nor did Mr. Freed ever state or otherwise indicate that Davis Wright Tremaine ("DWT") represented TGDC in the Washington action or that anyone at DWT was appearing for TGDC in the Washington action. In fact, Mr. Freed did not acknowledge the Washington action at all.

(Boldface omitted.) The exchange concluded with these e-mails:

9

Bill-

Perkins Coie confirms it will accept service on behalf of Gerard Centioli in exchange for Defendants' collective deadline to respond to the federal complaint being extended to July 13. Please send Will Rava any acceptance of service forms.

If this is acceptable to you, I will prepare a stipulation under Local Rule 6-1 for a self-executing extension, and will circulate it on Monday. Since you are going to be in Hawaii, do you have a colleague who can provide e-filing consent on behalf of Plaintiff?

Thank you.

Jake

[. . . .]

Jake,

ICON, ICONcepts and TGDC's responses are currently due June 19. An additional month does not seem reasonable given the daily harm that is occurring. Please explain the thought process for such a long extension Bill

[. . . .]

Bill,

As I mentioned we were retained yesterday and are asking for some professional courtesy so we have time to get up to speed on what is a complex multi-forum matter with significant history. We are unaware of any daily harm, or of any attempt by Plaintiff to seek emergency injunctive relief to address such harm.

That said, we can meet you in the middle and file responses on June 29. Is this acceptable?

Thanks.

Jake

[. . . .]

10

Jake and Will,

We will agree to responses by ICON, ICONcepts, TGDC and Gerard on or before June 29 in exchange for Perkins Coie accepting service on behalf of Gerard of (1) the Second Amended Cross-Complaint in the San Francisco Superior Court matter, and (2) the Complaint in the trademark matter. Please confirm that Davis Wright will accept service on behalf of TGDC of the latest papers counsel in the dissolution action is trying to serve.

I have attached the acceptance of service forms for items (1) and (2) above and will ask dissolution counsel to forward the same for the dissolution matter.

Please forward the proposed stipulation and the executed acceptances of service.
Thank you.

Bill Frimel

DWT did not represent in the e-mails or during the phone conference an intent appear and defend in the Washington action. The focus was on the California actions. When the last e-mail asked if DWT would accept service of papers in the Washington action, DWT did not respond. The acceptance of service forms were not forwarded to them.

Substantial evidence does not support the trial court's finding that during this exchange DWT had referenced the dissolution action pending in Washington. TGDC did not informally appear in this action on June 8.

### 2. Informal Appearance June 25

TGDC made an informal appearance via the June 25 e-mail to Buich's Washington counsel. The e-mail was received after the default was taken, but before the court accepted the second motion for default judgment for filing and before the judgment was entered. The June 25 e-mail acknowledges the

11

dissolution action and TGDC's intent to litigate through the statement "please send us proof of service, so that we can that we can get the case, including our deadline to respond to the complaint, calendared appropriately." (Emphasis added.) However, this appearance still would not entitle TGDC to notice of the motion for entry of default judgment. CR 55(a)(3), which governs motions for entry of default, contains a provision requiring notice if a party has appeared. CR 55(b), which governs motions for entry of default judgment, does not contain a similar provision.

Morin is instructive here on the notice requirements of default judgment proceedings. 160 Wn. 2d at 748. In one of the consolidated cases, Gutz, the defendant's representatives made several contacts prior to the motion for default judgment that the court determined were more appropriately analyzed for inequitable conduct by plaintiff's counsel. See Id. at 751, 758 (remanded for consideration of whether attorney's conduct warranted relief under White v. Holm, 73 Wn.2d 348, 352, 438 P.2d 581 (1968), or CR 60(b)(1) or (4)). After the defendant's motion to vacate the default order was denied, the plaintiff moved for an entry of default judgment. Id. at 751-52. Notwithstanding the fact that the defendant had appeared in court to contest the default, the plaintiff moved for an entry of default judgment without notifying the defendant. Id. at 752. The trial court granted the motion for entry of default judgment without notice. Id. The Washington Supreme Court declined to void that order for lack of notice, and instead remanded for consideration on whether the default should be vacated under CR 60(b)(1) and 60(b)(4). Id. at 758. Under Morin, the June 25 e-mail did not entitle TGDC to notice of the motion for entry of default judgment.

12

The trial court erred in vacating the default and default judgment under CR 60(b)(5).

## B. CR 60(b)(4): Fraud, Misrepresentation or Misconduct

The trial court also found that the default judgment could be vacated based on 60(b)(4). CR 60(b)(4) allows the court to set aside an entry of default judgment based on fraud, misrepresentation, or other misconduct of an adverse party. "[F]or more than a century, it has been the policy of [the Washington Supreme Court] to set aside default judgments liberally." Morin, 160 Wn.2d at 754.

The trial court found that Buich's attorneys "acted in a manner that misled DWT into believing that TGDC had not been served," and that Buich's attorneys would be forwarding forms to accept service. This finding is supported by substantial evidence. TGDC's attorneys claim Buich's California attorneys represented that Centioli was "avoiding service" without disclosing that Centioli had been served in the dissolution action. Buich's California attorney, however, claimed that he stated specifically that Centioli was avoiding service for the notice of summary judgment, rather than service of process. Buich's attorneys later on June 8, asked DWT to confirm that they would accept service for "the latest papers counsel in the dissolution action is trying to serve." The trial court knew that DWT did not know prior to the phone conversation that Centioli had been served with a summons and complaint in that action. Buich's California counsel of course knew service of process had been completed and knew that DWT was confused about whether service of process had been completed. Viewing the respective versions counsel presented of the phone conversation and the subsequent e-mails, the trial

13

court was entitled, as the finder of fact, to conclude that the DWT version of the conversation was correct. Morse v. Antonellis, 144 Wn.2d 572, 574, 70 P.3d 125 (2003) (Credibility determinations are soley for the trier of fact and cannot be reviewed on appeal.). In that version, Buich's statement that "Centioli was avoiding service of process" was not qualified by clarification of what was to be served. This omission reasonably led DWT to conclude Centioli was avoiding service of original process to commence the Washington action. The finding that DWT had been misled is supported by substantial evidence.

For purposes of CR 60(b)(4), it is immaterial whether a misrepresentation is innocent or willful. Peoples State Bank v. Hickey, 55 Wn. App. 367, 371, 777 P.2d 1056 (1989) ("It is immaterial whether the misrepresentation was innocent and willful. The effect is the same whether the misrepresentation was innocent, the result of carelessness, or deliberate."). Here, there was misrepresentation by omission of material fact which misled DWT into not appearing in the action.

The trial court did not err in vacating the default judgment under CR 60(b)(4).

C. CR 60(b)(1): Mistake or Excusable Neglect

Four factors must be shown to vacate a default judgment under CR 60(b)(1): (1) Substantial evidence supports a prima facie defense; (2) failure to respond was due to mistake, inadvertence, surprise, or excusable neglect; (3) the defendant acted with due diligence after notice of the default judgment; and (4) the plaintiff will not suffer substantial hardship if the default judgment is vacated. Little v. King, 160 Wn. 2d. 696, 703-04, 161 P.3d. 345 (2007). Application of the four

part test is not mechanical. <u>VanderStoep v. Guthrie</u>, 200 Wn. App. 507, 517, 402 P.3d 883 (2017), <u>review denied</u>, 189 Wn.2d 1041, 409 P.3d (2018). The primary concern is whether justice is being done. <u>Id.</u> This court must determine what is "just and equitable" based on the specific facts of each case, not based on a fixed rule. <u>Id.</u> at 517-18. We review the trial court's decision to vacate a default judgment for abuse of discretion. <u>Trinity</u>, 176 Wn. App. 195.

TGDC has presented a prima facie defense to dissolution. In reviewing the prima facie case, the court views the evidence and reasonable inferences in the light most favorable to the defendant. <u>VanderStoep</u>, 200 Wn. App. at 519-20. The defendant's argument does not have to be particularly strong or conclusive. <u>Id.</u> at 520. Buich's argument for dissolution is that it is no longer reasonably practicable for TGDC to carry on its activities.[1] Buich points out that TGDC is not actively developing new restaurants, and that Buich himself will never consent to the opening of another restaurant. TGDC's defense is that the parties are not actively developing restaurants because Buich and TGDC are engaged in litigation to determine their rights under the operating agreement. It points out that TGDC continues to operate the Tadich Grill website and facilitates the sale of Tadich Grill

---

[1] Buich points out that RCW 25.15.274 does not define "reasonably practicable," and that there are no published Washington cases defining its meaning. So, he cites various statutes and authorities from other jurisdictions in support of his definition: that it is not "reasonably practicable" for limited liability company to carry on its activities if (1) the member's and/or managers are unable to work together to achieve the company's purpose and/or (2) where the entity is financially unstable. Buich's arguments are more appropriately addressed at trial than at this preliminary stage. As noted above, the application of the test is not mechanical, but rather is guided by principles of equity. <u>VanderStoep</u>, 200 Wn. App at 517. Our primary inquiry is whether justice is being done. <u>Id.</u>

gift cards. It also relies on TGDC's valuable assets, including a right of first refusal to purchase the Tadich Grill, a license agreement from Tadich Grill, and the Washington, D.C. Tadich Grill project.

Buich contends these claims are merely "conclusory," and that TGDC hasn't provided enough detail for how it will continue to operate. The parties are currently litigating the veracity of these claims in other forums.

Questions of fact need to be resolved at a minimum under either parties' arguments. At this early stage, equity is best served by allowing litigation of these claims to continue on the merits. The evidence is sufficient to support finding TGDC has met its burden of presenting a prima facie case.

The trial court concluded that TGDC's delay in responding was due to excusable neglect. The neglect was precipitated by statements and conduct that misled DWT into believing that Centioli had not been served in the action. And, as evidenced by the June 25 e-mail, DWT was still under the impression that service had not occurred in the Washington action. This evidence is sufficient to support a conclusion of excusable neglect.

DWT was in communication with Buich's Washington attorney while Buich sought entry of default judgment. DWT immediately engaged in negotiations to vacate the default upon learning of its entry. DWT filed a motion to vacate the default judgment on July 18, just one week after Buich's attorneys declined to stipulate to vacate the default judgment. This evidence is also supported by the fact that TGDC was diligent in seeking relief from default.

16

Last, Buich did not assert to the trial court that he would suffer undue hardship if the default was vacated.

The record contains sufficient evidence of the necessary factors to warrant vacating the default judgment under CR 60(b)(1). The trial court did not abuse its discretion by doing so.

CR 55(c) allows the court to set aside a default "for good cause shown and upon such terms as the court deems just." CR 55(c)(1). The trial court had properly vacated the default judgment. The underlying acts that misled DWT into not appearing and defending that supported vacating the judgment also provide an equitable basis for the trial court to vacate the order of default. The trial court did not abuse its discretion by also vacating the order of default based on DWT's excusable neglect.

We affirm the vacation of the default judgment and order of default.

## II.  Attorney Fees

Buich contends that the trial court erred in awarding attorney fees to TGDC. Alternatively, he contends that that the award was not reasonable because both the hours worked and the rates charged were unreasonable. Respondent argues that the trial court's award was equitable and reasonable, and that it is entitled to further attorney fees on appeal. We affirm the trial court's award of attorney fees and award TGDC attorney fees for this appeal.

### A.  Attorney Fees Below

Vacation of default judgment is equitable in nature and the trial court has discretion to do justice between the parties. Hous. Auth., 105 Wn. App. at 192.

17

This court should therefore review a trial court's decision to award attorney fees for abuse of discretion. Id. ("'The decision to impose terms as a condition on an order setting aside a judgment lies within the discretion of the court." (quoting Knapp, 32 Wn. App. at 756)). This court reviews whether the amount of attorney fees is reasonable under an abuse of discretion standard. Taliesen, 135 Wn. App. at 141.

The trial court found multiple grounds upon which TGDC was entitled to vacation of the default judgment. The court also found that Buich's counsel failed to inform the court of relevant communications between the parties. Based in part on this behavior, TGDC sought CR 11 sanctions against Buich's attorneys. The trial court instead found that justice between the parties was best served by awarding reasonable attorney fees to TGDC. Where the court has vacated a default judgment, and in equity vacated a default order, it is not unreasonable to award fees necessarily incurred in obtaining that order. The trial court did not abuse its discretion in determining that an award of attorney fees was warranted.

We also find that the trial court did not abuse its discretion in determining the reasonableness of DWT's hours and rates. Washington courts use the lodestar method to compute attorney fees. Henningsen v. Worldcom, Inc., 102 Wn. App 828, 847, 9 P.3d 948 (2000). The lodestar is first determined by multiplying the reasonable number of hours worked by the reasonable hourly rate. Id. The lodestar is presumed to be the reasonable fee, but trial court then has discretion to adjust the lodestar upward or downward in rare instances. Id. Courts must take an active role in assessing the reasonableness of fee awards. Berryman

v. Metcalf, 177 Wn. App. 644, 657, 312 P.3d 745 (2013). In this case, all the hours awarded to DWT were spent negotiating to stipulate vacation and on subsequent motions practice. In determining the reasonableness of the reward, the court considered the conduct of Buich's attorneys and their refusal to stipulate to the vacation. Such consideration was within the trial court's discretion.

Buich provided detailed objections to a number of DWT's billing entries that he considered duplicative.[2] DWT responded to these concerns by voluntarily reducing their request by $10,325.00. The court indicated it had found other hours unreasonable, as evidenced by its edits to the proposed order, and further reduced the amount it awarded by roughly another $9,000. The trial court therefore took an active role in determining the reasonableness of DWT's hours worked.

The finding that the rates charged were reasonable was also within the trial court's discretion. DWT billed its client for hours worked by attorneys in San Francisco and Seattle at their standard rates. Where attorneys have an established rate for billing clients, that rate will likely be the reasonable rate. Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 581, 597, 675 P.2d 193 (1983).

---

[2] Buich cites Berryman, 177 Wn. App. at 659, and Mayer v. City of Seattle, 102 Wn. App 66, 82-83, 10 P.3d 408 (2000) to support the proposition that a trial court's failure to address each challenged time entry warrants reversal. Those cases are inapposite because each case involved special circumstances that warranted more thorough review. Mayer required the court to segregate fees associated with multiple claims and consider the contingent nature of representation. 102 Wn. App at 80-83. Berryman involved a fee that was grossly disproportionate to the amount in controversy. Berryman, 177 Wn. App at 661. These cases do not stand for the proposition that the trial court must prepare detailed findings in response to every challenged time entry of the fee award. Rather, the proper test is whether the trial court took an active role in assessing the reasonableness of the fee award. Id. at 657.

Buich argues that it was unreasonable for DWT to have California attorneys work on a Washington motion. TGDC counters that it charged the standard rate for each attorney who worked on the case. TGDC further argues that the work that San Francisco attorneys performed was necessary because they were primarily responsible for this multi-forum dispute, and were therefore most familiar with the facts and procedural history of this case. Buich cites no authority to support the proposition that an out-of-state attorney's rate for work reasonably necessary in connection with a Washington motion must be found unreasonable if greater than local rates. "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). The trial court did not abuse its discretion in allowing these attorneys to charge their standard rates for their work.

We affirm the trial court's award of attorney fees was reasonable.

## B. Attorney Fees on Appeal

TGDC argues that it should be entitled to attorney fees because it prevailed below and on appeal, and because the appeal is so frivolous as to warrant sanctions under RAP 18.9(a). "[W]here a prevailing party is entitled to attorney fees below, they are entitled to attorney fees if they prevail on appeal." Sharbono v. Universal Underwriters Ins. Co., 139 Wn. App. 383, 423, 161 P.3d 406 (2007). The appeal is not frivolous. The attorney fees awarded below were discretionary, not an entitlement which carries over on appeal. Though we disagree with the trial

20

court in some of its findings, we affirm its conclusions and order. Therefore, we exercise our discretion to award TGDC attorney fees on appeal.

We affirm.

Appelwick, C.J.

WE CONCUR:

Andrus, J.                    Mann, ACJ